Argued and submitted September 20, 1990, reversed and remanded for reconsideration
January 23, 1991

Kimberley A. PETERS,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and One-Stop Market,
*Respondents.*

(90-AB-280; CA A64020)

804 P2d 507

David S. Tilton, Coos Bay, argued the cause for petitioner. With him on the brief was Oregon Legal Services Corporation, Coos Bay.

Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent One-Stop Market.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and De Muniz, Judge.

BUTTLER, P. J.

**BUTTLER, P. J.**

Claimant seeks judicial review of an Employment Appeals Board order setting aside the referee's decision and denying claimant unemployment benefits on the ground that she had voluntarily left work without good cause. ORS 657.176(2)(c). We reverse and remand for reconsideration.

EAB made these findings:

"(1) Claimant worked for One-Stop Market from April 30, 1989, to November 10, 1989, as a clerk. (2) The claimant usually worked from 4:00 p.m. to midnight on Wednesday, Thursday and Friday, and from 8:00 a.m. to 4:00 p.m. on Saturday and Sunday. The employer did not have a permanent schedule and the owner retained the prerogative to change the schedule. (3) Early in the week beginning November 5, 1989, the owner scheduled claimant to work from 4:00 p.m. to midnight on Saturday, November 11, 1989. (4) On November 10, 1989, the claimant told the owner she was not going to work on November 11, 1989. The claimant had a family reunion to attend on November 11, 1989. (5) The claimant was willing to work her normal 8:00 a.m. to 4:00 p.m. shift but not the hours the employer scheduled her to work as those hours conflicted with the family reunion. (6) The owner told the claimant that he expected her to report as scheduled. (7) Claimant asked the employer if she could find someone to work in her place. The employer refused to allow her to find a replacement. (8) The claimant did not report to work on November 11, 1989, or thereafter. (9) On the evening of November 11, 1989, the claimant asked the manager if she was to report at 8:00 a.m. on November 12, 1989. The manager told the claimant that because the claimant had not appeared for her November 11, 1989, shift, the manager had made arrangements to cover the November 12 shift. The manager told the claimant she should report to the employer's premises on November 12, 1989, to talk with the owner. (10) The claimant did not do so and did not speak with the owner until November 14, 1989."

The issue is whether claimant voluntarily quit or was discharged. If she quit *without* good cause or was discharged for misconduct connected with work, she is disqualified for

benefits. ORS 657.176(2)(a), (c).[1] OAR 471-30-038(2) clarifies the distinction between a voluntary leaving of work and a discharge:

> "(a)    If the employe could have continued to work for the same employer for an additional period of time the separation is a voluntary leaving of work * * *.
>
> "(b)    If the employe is willing to continue to work for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge * * *."

The referee allowed benefits, concluding that claimant had been discharged for reasons other than misconduct. On appeal, EAB, with one member dissenting, held that claimant had quit voluntarily without good cause.

In reaching its conclusion, EAB agreed that the referee's conclusion was reasonable. It then said:

> "However, it ignores the fact that the claimant opted not to come to work in the face of a specific directive to do so from her supervisor. We view the employer-employee relationship as being severed as of the date claimant opted to go to the reunion and not to work. * * * Because the employer had additional work available for the claimant and was willing to allow the claimant to work on November 11, 1989, but the claimant was not willing to do so, her separation from work is properly adjudicated as a voluntary leaving."[2]

EAB's reasoning overlooks its finding that claimant called employer on the night of the 11th to inquire whether she should report for work at 8 a.m. on November 12. As a result, its conclusion does not rationally follow from its findings, because it fails to explain why claimant's calling employer on the day that EAB concluded that she had quit does not establish that claimant was willing to continue to work but was not allowed to. *Home Plate, Inc. v. OLCC,* 20 Or App 188, 530 P2d

---

[1] ORS 657.176(2)(a) and (c) provide, in part:

"(2)    An individual shall be disqualified from the receipt of [unemployment compensation] benefits * * * if * * * the individual:

"(a)    Has been discharged for misconduct connected with work, or

"* * * * *

"(c)    Voluntarily left work without good cause * * *."

[2] The referee did not overlook the fact that claimant did not report to work on November 11, as she was told to do.

862 (1975). If that were the case, claimant would not have voluntarily quit, but would have been discharged. The question would then become whether her discharge was for an isolated instance of poor judgment, even though her failure to report for work was a wilful violation of the standards of behavior that an employer has the right to expect of an employee. OAR 471-30-038(3); *Bunnell v. Employment Division,* 304 Or 11, 741 P2d 887 (1987).

Reversed and remanded for reconsideration.