Submitted on record and brief December 11, 1996, reversed and remanded for reconsideration February 12, 1997

Les LINVILLE,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Willamette Industries,
*Respondents.*

(96-AB-1107; CA A93644)

934 P2d 442

Les V. Linville filed the brief *pro se*.

Philip Schradle, Assistant Attorney General, waived appearance for respondent Employment Department.

No appearance for respondent Willamette Industries.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Claimant seeks review of a decision of the Employment Appeals Board (EAB) that disqualified him from receiving unemployment insurance benefits on the grounds that he was discharged for misconduct connected with work, ORS 657.176(2)(a); OAR 471-30-038(3)(a), and that the incident for which he was discharged was not an isolated instance of poor judgment, OAR 471-30-038(3)(b). We reverse and remand.

Claimant had been an employee of Willamette Industries (employer) for 30 years at the time that he was discharged from his job as a dryer tender, on December 13, 1995. Employer discharged claimant for unauthorized removal of company property, specifically, a piece of dryer insulation. Claimant applied for unemployment insurance benefits, and his claim was denied on the grounds that he had been discharged for misconduct, ORS 657.176(2)(a), and that he had been discharged for theft, ORS 657.176(3). Claimant requested a hearing on the matter before an administrative law judge (ALJ).

At the hearing, employer maintained that claimant had taken a new roll of dryer insulation, worth $101.25. Claimant maintained that he had taken only a scrap of used and dirty dryer felt that was, in his opinion, of no value. The ALJ did not resolve whether claimant had taken a new or a used piece of dryer felt and concluded that, regardless of the value of the dryer felt, claimant was ineligible for unemployment insurance benefits under ORS 657.176(3) because he had been discharged for theft. The ALJ also concluded that claimant was ineligible for benefits under ORS 657.176(2)(a) because he had been discharged for misconduct.

Claimant appealed the ALJ's decision to the EAB. Before reaching a decision, the EAB remanded the matter to the ALJ for further factfinding with regard to the value of a piece of used and dirty scrap insulation, such as claimant asserted he had taken. After the parties presented evidence on that issue, the EAB found:

"The employer failed to persuasively rebut claimant's assertion that he removed an old piece of dryer felt as opposed to a new roll of insulation as contended by the

employer. Accordingly, we have found facts in accordance with claimant's testimony that he took an old and dirty piece of dryer felt."

With regard to the material's value, the EAB concluded that the record was not persuasive that the scrap of dryer felt had any value. Consistent with that finding, the EAB reversed the portion of the ALJ's decision that had concluded that claimant was discharged for theft.[1] The EAB affirmed the portion of the ALJ's decision that had concluded that claimant was discharged for misconduct.

The EAB's findings of fact with regard to claimant's discharge are as follows:

"(2) On December 10, 1995, claimant took an old scrap of dryer felt[,] which had been replaced by new felt in the employer's dryer doors, placed it in a bag and put it in the bed of his pick up truck. (3) Claimant had not asked for permission to remove the dryer felt. (4) The scrap claimant took had been under the employer's dryers and later under an employee's locker for a period of several months. (5) The scrap measured about five feet long, was dirty and had wood chips in it. (6) Claimant planned to use it as insulation for his pump shack. (7) Before claimant left the plant that evening, the employer confronted him and removed the dryer felt from the back of claimant's truck.

"(8) The employer's policies require employees to receive supervisory permission to remove *any* item from the employer's property that belonged to the employer. (9) Claimant knew and understood the employer's policy. (10) He had asked for supervisory permission in the past to remove items from the employer. (11) He also knew that other employees had been caught taking items that had belonged to the employer and that those employees at least had to pay for the items removed.

"(12) The employer discharged claimant on December 10, 1995, for removing an item that had belonged to the employer without receiving permission from the employer." (Emphasis in original.)

---

[1] Respondents do not challenge the EAB's reversal of the ALJ's conclusion that claimant was discharged for theft.

A witness for employer testified that employees were required to obtain either verbal or written permission, in the form of a "materials pass," to remove employer property. Claimant testified that he did not obtain a materials pass for the scrap of dryer felt because, unlike the previous items for which he had obtained materials passes, he perceived that the scrap of dryer felt had no value.[2] Claimant testified that he perceived that the scrap of dryer felt was something that the employer could not use, the equivalent of "garbage."[3]

------

[2] As relevant to his judgment that the scrap of dryer felt was different from the other materials for which he had obtained materials passes, claimant testified:

"A. Yes, I've applied for passes to take scrap iron * * *. Glen had given me passes for scrap iron and various things. * * * I got one from Jerry Underwood for banding 2 x 4's that come under purchase loads or something.

"* * * * *

"Q. Okay * * * on previous occasions you had taken scrap things, like scrap iron, et cetera[. W]hat distinguished getting a pass on those occasions from getting one on this occasion?

"A. The value of the item.

"Q. How much was the value of the scrap iron, for instance, that you took?

"A. Oh, scrap iron, probably, at that time was bringing about $100 and something a ton, you know.

"Q. And so how much did you take?

"A. Oh, I—I took it for fence posts * * *, probably two or three dollars for each post * * *.

"Q. And how * * * many posts did you take home?

"A. Oh, I probably got about eight or ten good posts * * *.

"Q. Okay * * * what did you consider to be the value of this insulation?

"A. I didn't feel that it had any value, no value at all."

[3] As relevant to his perception that the scrap of dryer felt was "garbage," claimant testified:

"A. Well, I picked up a scrap of insulation that the company didn't use anymore. They changed * * * to different insulation * * * in their [dryer] doors. And this piece had kicked around between the dryers, and it finally got put behind the lockers back in behind. And it was dirty and not much to it or, you know, it was garbage box stuff.

"* * * * *

"Q. Now did you find it in the garbage box?

"A. No. Like I said, it'd rolled around between the dryers for probably six months or so. It got stuck behind Carl Wirth's locker. And that night the wind was blowing real, real hard * * *. And * * * the wind had blow[n] the * * * scrap of insulation out there, and it'd rolled out—was rolling out across the back between two dryers.

"* * * * *

A witness for employer testified that the rule requiring employer permission to remove material was "strictly enforced," but employer did not introduce any evidence that that rule, or any other rule, specified that violators would be discharged. Claimant testified that no previous employee had been discharged for failing to get a materials pass. Claimant testified that other employees who had failed to get materials passes were asked either to return the material or to pay for it. Claimant testified that he believed that employer was motivated to discharge him because employer wanted to replace him with a new, younger employee to whom employer would have to pay fewer benefits.

On review, claimant argues that the EAB erred in concluding that the incident that led to his discharge was misconduct and in concluding that it was not an isolated incident of poor judgment.[4] We review the EAB's findings of fact for substantial evidence and its conclusions for errors of law. ORS 183.482(8). There is substantial evidence in the record to support the EAB's findings of fact, set forth above. The remaining issues are whether the EAB erred as a matter of law in reaching the conclusions that the incident that led to claimant's discharge was misconduct and was not an isolated instance of poor judgment.

The EAB concluded that claimant was discharged for "misconduct connected with work" and therefore, pursuant to ORS 657.176(2)(a), disqualified him from receiving

---

"Q. Uh-huh. What was the size of the piece that you took, the piece or the roll?

"A. Well, [if] you unrolled it, it was about * * * four to five feet long. Had a lot of wood chips in it and black dirt and everything because it'd been rolled around on the floor for about six months around there.

"* * * * *

"Q. The insulation would have worked to perform the function it was made for, correct? Meaning, dirty or not, the insulation would've worked to insulate? Is that true with the condition it was in?

"* * * * *

"A. It wouldn't seal off [the dryer doors]. It had chips. It'd catch on fire. The chips that [were] in the insulation and stuff would catch on fire. It had no purpose for dryer insulation. And what I [wanted to use] it for was [to insulate my pump house.] I wasn't running the well over 300 and 400 degrees, you know, [under circumstances when] it would've caught fire or anything. So, yes, it had a purpose for me. But I don't think it had a purpose for them."

[4] Employer did not file a response brief.

unemployment insurance benefits. "Misconduct" is defined in OAR 471-30-038(3), which provides, in part:

"(a)   As used in ORS 657.176(2)(a) * * * a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. An act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest is misconduct.

"(b)   Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from a lack of job skills or experience are not misconduct."

In order to deny a claimant unemployment insurance benefits under ORS 657.176(2)(a), the EAB must determine not only that the claimant engaged in misconduct as defined in OAR 471-30-038(3)(a), but also that the exclusions to the definition of misconduct provided in OAR 471-30-038(3)(b) do not apply. *Bunnell v. Employment Division*, 304 Or 11, 16, 741 P2d 887 (1987); *see also Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 106-08, 862 P2d 1293 (1993) (explaining *Bunnell*).[5] We first consider whether the EAB erred as a matter of law in concluding that claimant engaged in misconduct under OAR 471-30-038(3)(a).

■     The EAB concluded that "claimant's attempted removal of the dryer felt amounted to a wilful violation of the employer's reasonably expected standards of behavior." In so concluding, the EAB reasoned:

"The employer discharged claimant for removing an item that belonged to the employer without requesting the employer's permission. The employer had a reasonable right to expect employees to request the employer's permission to remove items belonging to the employer. Claimant knew of and understood the employer's policy. However, on

---

[5] *See also Peters v. Employment Div.*, 105 Or App 283, 287, 804 P2d 507 (1991) (instructing EAB of necessary inquiries on remand); *Flaucher v. Employment Division*, 92 Or App 396, 399-400, 758 P2d 422 (1988) (reversing decision that claimant was discharged for misconduct on the ground that EAB failed to consider whether incident was an isolated instance of poor judgment); *Muldrew v. Employment Division*, 92 Or App 60, 63, 757 P2d 438 (1988) (same); *Thomas v. Employment Division*, 90 Or App 454, 458, 752 P2d 1248 (1988) (same).

December 10, claimant attempted to remove an old piece of dryer felt, which had belonged to the employer, for use in his pump house. Claimant made a conscious decision to remove the dryer felt for his own use. Although he asked for permission to remove other items in the past, he offered no persuasive explanation for his failure to do so on this occasion." (Footnote omitted.)

That analysis supports the conclusion that claimant's removal of the scrap of dryer felt was a willful violation of the employer's reasonably expected standards of conduct. Therefore, the EAB did not err as a matter of law in concluding that the incident that led to claimant's discharge amounted to "misconduct" as defined in OAR 471-30-038(3)(a).

■     We turn to whether the EAB erred as a matter of law in concluding that the incident that led to claimant's discharge was not an isolated instance of poor judgment under OAR 471-30-038(3)(b). With regard to that conclusion, the EAB reasoned:

> "Claimant's conduct cannot be excused as an isolated instance of poor judgment. Claimant knew of the employer's policy, but decided not to adhere to it. *The employer's policy did not accord claimant* or any other employee, *the right to exercise judgment* in determining whether employer permission was required. *Consequently, claimant's decision* to remove the dryer felt *did not involve the exercise of judgment in terms of the employer's policy.*"[6] (Emphasis supplied.)

The EAB concluded that, because the rule claimant violated did not *provide* for employees to exercise judgment, the "isolated instance of poor judgment" exception to the definition of misconduct did not apply. In essence, the EAB reasons that because claimant violated the rule (by exercising judgment with regard to whether permission was required), the violation was not an isolated instance of poor judgment. That conclusion is erroneous as a matter of law. In describing the relationship between a willful rule violation, which is the type of

---

[6] The EAB also concluded that the incident that led to claimant's discharge was not a good faith error. OAR 471-30-038(3)(b). Claimant does not challenge that conclusion on appeal.

misconduct that the EAB concluded claimant engaged in, and an isolated instance of poor judgment, we have explained that

> "conduct that constitutes *a wilful violation* of the standards of behavior that the employer has a right to expect *is not 'misconduct,'* for purposes of disqualification from employment benefits, *if the conduct is an isolated instance of poor judgment.*" *Waters v. Employment Div.*, 125 Or App 61, 64, 865 P2d 368 (1993) (citing *Bunnell*) (emphasis supplied).

The EAB's analysis evades the necessary second inquiry, whether the conduct was an isolated instance of poor judgment, by equating it with the first inquiry, whether there was a rule violation. In doing so, the EAB erred as a matter of law because the two inquiries are distinct. *Bunnell*, 304 Or at 16; *Nelson*, 318 Or at 106-08.

■      Furthermore, the EAB's conclusion is erroneous in another respect. When an employee's exercise of judgment is permissible, *i.e.*, provided for by rule, the employee's exercise of judgment in terms of the rule cannot constitute a willful violation of that rule. In this case, if the rule at issue *had* allowed claimant to exercise judgment, *i.e.*, if the rule had provided that an employee is required to obtain permission to remove material, unless, for example, the employee deems the material worthless, then claimant would not have violated the rule. Under those circumstances, claimant's conduct would not be misconduct under OAR 471-30-038(3)(a),[7] and it would have been unnecessary even to consider whether that conduct was an isolated instance of poor judgment under OAR 471-30-038(3)(b).

In sum, whether a rule accords employees the right to exercise judgment is irrelevant in determining whether an employee's conduct with regard to the rule is an isolated instance of poor judgment. Because the EAB erred as a matter of law, we reverse and remand for it to reassess whether

---

[7] Of course, a permissible exercise of judgment could constitute "misconduct" under the alternative definition, "[a]n act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest." OAR 471-30-038(3)(a). However, the EAB did not conclude that the alternative definition applied to claimant's conduct, and we agree.

the incident that led to claimant's discharge was an isolated instance of poor judgment.[8]

Reversed and remanded for reconsideration.

---

[8] We do not disturb the remainder of EAB's decision.