Argued and submitted October 15, reversed and remanded for award of benefits
December 15, 1999

Federico PEREZ,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and J. Frank Schmidt & Son Co.,
*Respondents.*

(EAB No. 98-AB-2491; CA A104860)

992 P2d 460

Brena Moyer Lopez argued the cause for petitioner. On the brief were Mark J. Wilk and Oregon Legal Services Corp. With her on the reply brief was Oregon Legal Services Corp.

David Coursen, Assistant Attorney General, argued the cause for respondent Employment Department. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Shelley D. Russell and Crispin & Associates filed the brief for respondent J. Frank Schmidt & Son Co.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

**HASELTON, J.**

Claimant seeks review of a decision of the Employ-ment Appeals Board denying him unemployment benefits on the basis that an intemperate verbal exchange with his employer was "misconduct." ORS 657.176(2)(a); OAR 471-030-0038(3)(a). We conclude that, even if claimant's outburst was a wilful violation of employer's reasonable expectations, it was part of an "isolated instance of poor judgment" and, thus, was not "misconduct." OAR 471-030-0038(3)(b). Accord-ingly, we reverse.

Claimant worked for employer for 13 years, from March 11, 1985 to June 24, 1998. As a crew supervisor at employer's wholesale tree nursery, claimant received consis-tently positive work evaluations. For example, in a 1996 work evaluation, claimant's immediate supervisor character-ized him as dependable, responsible, someone who "always gives 110%" and, with respect to his attitude towards man-agement, a "pleasure to work with."

On the afternoon of June 23, 1998, a representative of a farm workers' union approached claimant and his crew just as they were returning to their work site after a 30-min-ute lunch break. The union representative talked to claimant and his crew for about 10 minutes. Sarah Bateman, the farm's administrative assistant, observed the union organ-izer talking to the crew and asked the organizer who he was and why the crew was not working. The union representative did not identify himself to Bateman, but he did accede to her request that he step from employer's property on to the public road a few feet away. Bateman then reminded claimant and his crew that lunch was over, and the crew returned to work in the field. Thereafter, claimant continued to talk with the union representative for another 10 to 20 minutes while he sharpened a hoe. Following that conversation, claimant returned to the field and completed his shift without any fur-ther interaction with management representatives. Later the same day, Bateman reported to Sam Doane, the farm manager, that claimant had failed to perform his work duties for roughly 30 minutes while he was speaking to a visitor.

The next day, claimant arrived for work as scheduled and learned that, due to inclement weather, employer had decided to send all employees home. Before claimant left for the day, however, he was called into Doane's office to discuss the events of the day before. Claimant and Doane were joined by a translator who translated their conversation. Doane told claimant that employer had decided not to pay him for the 30 minutes he had spent talking to a visitor instead of supervising his crew on June 23. Claimant explained that he had been sharpening hoes while speaking to the visitor. A brief discussion ensued, and the farm manager told claimant that he had "one last chance to improve his performance and attitude." Claimant, responding in Spanish, told the farm manager to "stick it." Employer then told claimant to go home and return the next day to pick up his final paycheck. Claimant left and, when he returned the next day for his final paycheck, he apologized to the manager for his conduct. Employer did not offer claimant his job back, but agreed to pay claimant for the time he had spent sharpening hoes and talking with the union organizer on June 23.

Claimant applied for unemployment benefits. The Employment Department denied claimant unemployment benefits on the basis that he voluntarily left work without good cause. ORS 657.176(2)(c). Claimant requested a hearing. On review, the administrative law judge (ALJ) reversed the Department's decision, concluding that claimant was entitled to unemployment benefits because (1) employer had discharged him, i.e., he did not quit voluntarily, and (2) his verbal outburst was not "misconduct" because it was an isolated instance of poor judgment. OAR 471-030-0038(3)(b).

On review, the Board reversed. The Board agreed with the ALJ that employer had discharged claimant when the farm manager told him to leave and return the next day to pick up his final paycheck. Nonetheless, the Board concluded that claimant was not entitled to receive unemployment benefits because employer had discharged him for misconduct, i.e., the "stick it" comment,[1] that was not an isolated instance of poor judgment. OAR 471-030-0038(3)(b).

---

[1] The Board found that "employer discharged claimant for being insubordinate to the farm manager on June 24, 1998," and neither party disputes that finding.

■ On review, claimant raises two assignments of error. First, claimant argues that the Board's conclusion that he was fired for misconduct was not supported by substantial evidence. OAR 471-030-0038(3)(a). Second, claimant argues that, even if claimant's conduct was a wilful violation of employer's reasonable expectations, it was not disqualifying misconduct because it was an isolated instance of poor judgment. OAR 471-030-0038(3)(b). Employer cross-assigns error, arguing that, because claimant voluntarily left work without cause, the Board erred in concluding that employer discharged him. We review the Board's order for errors of law and substantial evidence. ORS 183.482(8).[2] In determining whether the Board's legal conclusions are supported by substantial evidence, we consider whether the Board articulated a rational connection between its findings of fact and the legal conclusions it drew from them. *See The Steel Yard, Inc. v. Natl. Council on Comp. Ins.,* 127 Or App 267, 271, 873 P2d 332 (1994).

■ ■ For the sake of analytical clarity, we begin by addressing employer's cross-assignment of error. The question of whether claimant voluntarily left work or was involuntarily discharged logically precedes any inquiry into the bases for the alleged "discharge." For the following reasons, we sustain the Board's determination that employer discharged claimant.

Under ORS 657.176(2)(c), an employee is not entitled to unemployment benefits if the employee voluntarily quits without good cause. OAR 471-030-0038(2) further explains:

"The distinction between voluntary leaving and discharge is:

---

[2] ORS 183.482(8) provides, in part:

"(a) The court may affirm, reverse or remand the order * * * [i]f the court finds that the agency has erroneously interpreted a provision of law * * *.

"* * * * *

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

"(a)  If the employee could have continued work for the same employer for an additional period of time the separation is a voluntary leaving of work;

"(b)  If the employee is willing to continue work for the same employer for an additional period of time but is not allowed to do so by the employer the separation is a discharge."

Applying that distinction, the Board reasoned:

"Arguably, claimant's response to the manager to 'stick it' was ambiguous. However, claimant's departure from work did not necessarily signify an unwillingness to continue work for an additional period of time because farm operations had been shut down for the day due to poor weather. The first unequivocal statement from either party occurred when the manager instructed claimant to leave and return the following day to collect his final check. At that point, we are persuaded that the employer was unwilling to have claimant return to work for an additional period of time. Therefore, we conclude that the employer discharged claimant."

The Board articulated a rational explanation for its conclusion that employer discharged claimant at the June 24 meeting. As the Board acknowledged, claimant's "stick it" comment to the farm manager was reasonably susceptible to several different interpretations—ranging from an emphatic response to employer's statements that he needed to "improve * * * his attitude" to "I quit." Given that ambiguity, the Board could, and did, rationally conclude that, in the totality of the emotionally charged exchange, claimant did not mean "I quit" when he told the farm manager to "stick it." Rather, as the Board determined, termination occurred only when Doane instructed claimant to leave and return the next day for his final paycheck, explicitly expressing employer's unwillingness to have claimant continue work. The Board's conclusion, that employer discharged claimant, was rationally related to its findings of fact.

We turn, then, to claimant's assignments of error, both of which involve aspects of the Board's conclusion that claimant was discharged for "misconduct." ORS 657.176(2). Under ORS 657.176(2)(a), an employee is not entitled to unemployment benefits "if the authorized representative

designated by the director finds that the individual * * *[h]as been discharged for misconduct connected with work." "Misconduct" is defined in OAR 471-030-0038(3), which provides, in part:

"(a)   As used in ORS 657.176(2)(a) and (b) a wilful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct.

"(b)   [*I*]*solated instances of poor judgment,* good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience *are not misconduct.*" (Emphasis added.)

Thus, in order to deny a claimant unemployment benefits under ORS 657.176(2), the Board "must determine not only that the claimant engaged in misconduct as defined in OAR 471-[0]30-[0]038(3)(a), but also that the exclusions to the definition of misconduct provided in OAR 471-[0]30-[0]038(3)(b) do not apply." *Linville v. Employment Dept.*, 146 Or App 317, 323, 934 P2d 442 (1997).

■      Claimant challenges the Board's determinations that his "stick it" remark was "misconduct" in that it was (1) a wilful violation of employer's reasonably expected standards of behavior; and (2) that remark did not fall within the "isolated instance of poor judgment" exclusion to the definition of misconduct. We need not, and do not, resolve claimant's first argument, because, even assuming that claimant's remark would otherwise constitute "misconduct" under OAR 471-030-0038(3)(a), this episode represents an "isolated instance of poor judgment."

The analytic premise of the Board's analysis was that, notwithstanding claimant's exemplary 13 years of service with employer, his remarks on June 24 were not an "isolated instance" because his conduct on June 23 also violated employer's reasonable expectations of workplace conduct:

"Claimant's conduct was not an isolated instance of poor judgment. Claimant also violated the employer's reasonable expectations when he failed to supervise his crew on June 23, 1998.[2] Claimant's conduct was not isolated. Nor was claimant's conduct a good faith error. Claimant has

failed to establish that he had a good faith basis to believe that the employer would condone his actions.

---

"[2] We are persuaded that claimant was, at best, wantonly negligent in failing to supervise his crew. Claimant and the crew had just returned from their lunch break at the time of their interaction with the union representative. Claimant was aware that the employer paid employees from the time they start their transit back to the field after their lunch break. Nonetheless, claimant allowed the crew to talk with the union representative for about ten minutes without trying to get the crew to perform the work they were being paid to do for the employer. The crew returned to work only when the farm assistant came out and told them that lunch was over. Next, claimant continued to talk to the union representative for an additional ten to twenty minutes while he sharpened a hoe, a task that only took about two to three minutes of attention. Finally, claimant did not take any measures to monitor the novice crew's efforts as they tended to hoeing around tender seedlings about 200 feet from claimant. Claimant's failure to direct his crew to return to work at the end of their break, continued discussion with the union representative while not performing work for the employer, and his failure to monitor his crew as they worked far from where claimant chose to carry on his conversation demonstrates that claimant was, at best, indifferent to the consequences of his actions."

The issue thus reduces to whether the Board erred in concluding that, when considered in the context of claimant's conduct throughout his employment with employer, claimant's conduct was more than an "isolated instance of poor judgment" and was therefore misconduct. Relying principally on *Bunnell v. Employment Division*, 304 Or 11, 15-16, 741 P2d 887 (1987), claimant argues that his remark on June 24 was part and parcel of a single episode encompassing, and precipitated by, the June 23 conduct. Thus, claimant reasons, his June 23 conduct and his June 24 remarks were not discrete "instances" but, when viewed in reference to his otherwise perfect 13-year record with employer, constituted, at worst, a single isolated instance of poor judgment. Employer essentially adopts and reiterates the Board's reasoning, arguing that, because claimant had engaged in misconduct

on June 23 when he spoke to a visitor during work hours, his "stick it" comment on June 24, even if nothing more than poor judgment, was not an *isolated* instance. Thus, whether claimant's "stick it" remark is an "isolated instance of poor judgment" depends, as a matter of law, on the meaning of the term "isolated instance." That is, for purposes of the rule, is each of the claimant's acts a separate "instance" or, if a series of acts are related as arising from the same employment episode, then are they collectively a single "instance"?

*Bunnell* is instructive. There, a claimant who worked as a retail sales person in the employer's department store was discharged following a vulgar verbal outburst. *Bunnell*, 304 Or at 13. One evening, the assistant manager of the store told the claimant to organize shelves in a certain department. The claimant refused, stating that she had other duties. When the manager insisted, the claimant exclaimed so loudly as to be heard by other employees that she had " 'had enough of this shit' " and "enough 'of this damn store.' " *Id.* Later the same evening, the claimant performed the requested work and apologized to the manager. The claimant had never previously used vulgar language on the job and had always followed management directives. Nevertheless, the employer discharged her the next day.

The Supreme Court reversed the Board's decision that claimant was discharged for misconduct, concluding that "[t]he findings demonstrate a classic example of an isolated instance of poor judgment which, without more, is not misconduct as defined by [OAR 471-030-0038(3)(b)]." *Id.* at 17. In so concluding, the court focused on the fact that this was the employee's only episode of insubordinate conduct on the job. The court stated:

> "the findings of fact by the referee in this case were inadequate to support his conclusion that this was not simply an isolated instance of poor judgment. Other than this isolated verbal outburst, followed by immediate job performance, there is nothing in this record to support the more serious finding of misconduct." *Id.*

Thus, even though the claimant technically engaged in two separate "acts" during the same incident—her initial refusal to comply with her supervisor's directive and her subsequent

vulgar and public response to her supervisor's repeated request—the Supreme Court treated the claimant's course of conduct as one isolated instance of poor judgment.

*Waters v. Employment Div.*, 125 Or App 61, 865 P2d 368 (1993), is also exemplary. There, an employee was discharged for leaving several "harassing and abusive" messages on a coworker's answering machine one evening following a conflict over the work schedule. We reversed the Board's conclusion that the employee's conduct was not an "isolated instance of poor judgment":

> "[W]e are concerned that [the Board's] reference to claimant's 'repeated' telephone calls indicates that [the Board] may have thought that it had to treat that conduct as falling outside the category of an 'isolated' incident because it involved more than one act. The calls were a single occurrence in the employment relationship, and [the Board] was not precluded from treating them as an isolated instance." *Waters*, 125 Or App at 64.

We concluded that, because the record showed only that the claimant "acted in anger and that he used poor judgment in expressing that anger, as did the petitioner in *Bunnell*," *id*. at 65, the Board erred in finding that claimant's conduct was more serious than poor judgment. Thus, in *Waters*, the employee's several distinct acts of misconduct over the course of an evening were nonetheless one "isolated instance of poor judgment" in the context of the employment relationship.

Similarly, in *Goodwin v. Emp. Div.*, 35 Or App 299, 581 P2d 115 (1978), we concluded that the claimant's conduct was an isolated instance of poor judgment. There, the claimant, who was the fabric department manager of the employer's department store, had become irritated by the fact that the manager of the neighboring cosmetics department frequently left her station at unauthorized times. One day when the claimant noticed that the cosmetics manager had left her station without permission, the claimant reported the occurrence to a store manager. The store manager reprimanded the cosmetics manager. Shortly thereafter, the claimant and the cosmetics manager met in a back room and an argument ensued. The store manager overheard them and told them to stop " 'catfighting.' " *Id*. at 302. The

claimant was distressed by the store manager's remark and followed her, asking to discuss the matter. The store manager then told the claimant to " 'shut up.' " *Id.* The claimant continued to follow the store manager upstairs, complaining that the manager was treating her unfairly. When the claimant persisted in loudly discussing the matter, the manager told her she was discharged. The manager testified that claimant did a good job at work, had never raised her voice until that day, and would not have been discharged had she ceased the discussion.

We reversed the Board's conclusion that the claimant was discharged for misconduct, reasoning:

> "In the instant case, there was a continuing conflict between petitioner and another department head. On the day of the incident, petitioner felt * * * that she, petitioner, was being blamed for the argument which ensued when she reported the behavior of the other department head to her supervisor. When told to stop 'catfighting,' petitioner attempted to explain her actions and was told to 'shut up.' When petitioner indicated that she was going to talk to the manager, petitioner was discharged. Under these circumstances, petitioner's persistent effort to pursue the matter constituted an isolated instance of poor judgment. This single instance of hotheadedness was insufficient to disqualify claimant from unemployment benefits." *Id.* at 303-04.

Thus, despite the fact that the claimant's conduct during the episode involved both fighting with another employee and insubordinate conduct, we viewed the entire episode as an "isolated instance of poor judgment." *Id.*

■ *Bunnell, Goodwin,* and *Waters* stand for the proposition that our "isolated instance of poor judgment" analysis focuses on whether the incident was "a single occurrence in the employment relationship," *Waters,* 125 Or App at 64, and not whether the incident involved more than one component "act" by the employee.[3]

---

[3] Employer argues that this case is controlled by *Halling v. Employment Div.,* 108 Or App 457, 816 P2d 1173, *rev den* 312 Or 525 (1991), in which we concluded that an employee's refusal to work with a coworker and continued use of profanity after a specific warning was not an isolated instance of poor judgment even though those acts occurred in a single exchange. We disagree. In *Halling,* the gist of our holding was that the repetitive and serious nature of the claimant's violations of

Given the holdings in *Bunnell, Waters*, and *Goodwin*, we conclude that, for purposes of the "isolated instance of poor judgment" analysis in this case, claimant's "stick it" comment on the morning of June 24 was a continuation of the same occurrence precipitated by his conduct on the afternoon of June 23. That is, the conversation on June 24 was claimant's first communication with employer concerning his alleged "nonsupervision/hoe-sharpening" on June 23. It was the first time that he was informed that he was to lose pay for that conduct and his first opportunity to respond to that discipline—which was later rescinded. Thus, properly viewed, the events of June 23 and 24 were, as a real and practical matter, a single continuing occurrence involving claimant and employer. So understood, those events could not be artificially segmented into discrete "instances" for purposes of avoiding the "isolated instance" exclusion.

█    We emphasize, finally, that nothing in the record suggests that claimant's conduct amounted to anything more serious than "poor judgment." Like the employee in *Bunnell*, claimant failed to follow a work directive (talked to a visitor and failed to adequately supervise his crew) and then reacted with anger and used poor judgment in expressing that anger when confronted about that failure.[4] Also, like the employee in *Bunnell*, claimant apologized to his manager for his outburst at the first opportunity following the incident. We conclude that claimant's conduct in this case was neither so egregious, *see City of Grants Pass v. Employment Division*, 94 Or App 328, 765 P2d 237 (1988) (police officer's intentional lie in filing an official report was too serious a violation to qualify as "an isolated instance of poor judgment") nor so repetitive, *see Halling*, 108 Or App at 461, as to be more than mere "poor

---

his employer's standards was more egregious than "poor judgment." In so concluding, we were persuaded by the fact that, unlike in *Bunnell*, where the employee's outburst was followed by immediate performance and an apology, the claimant in *Halling* followed her outburst with "repetitive conduct in the face of a warning to cease." 108 Or App at 461. We do not understand *Halling* to stand for the proposition that a single episode in an employment relationship cannot be an "isolated instance of poor judgment" simply because it involves more than one act by the employee.

[1] Indeed, claimant's conduct appears to be less egregious than the claimant's conduct in *Bunnell*, which involved an "extremely loud" outburst of profanity audible to third persons. 304 Or at 13.

judgment." The Board erred in concluding that claimant was discharged for "misconduct." ORS 657.176(2)(a).

Reversed and remanded for award of benefits.