Submitted on record and briefs August 4, 2000, reversed and remanded
January 31, 2001

Robyn MacKILLOP,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Fred Meyer,
*Respondents.*

(EAB 99-AB-1556; CA A108174)

18 P3d 461

Robyn MacKillop filed the brief *pro se.*

No appearance for respondent Employment Department.

No appearance for respondent Fred Meyer.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioner seeks review of an order of the state Employment Appeals Board (the Board), in which the Board held that she was disqualified from receiving unemployment compensation because she was discharged from her employment for misconduct. ORS 657.176(2). The Board concluded that the conduct that resulted in petitioner's discharge was not an isolated instance of poor judgment under OAR 471-030-0038(3), such as would exempt her from disqualification. We remand for reconsideration.

The Board made the following findings. Petitioner was hired by employer Fred Meyer on May 16, 1998. She held a management position in one of the Fred Meyer stores beginning on November 15, 1998. On May 30, 1999, she reported for work and was the only operations manager on duty that day. One of her duties as operations manager was to ensure that each checker had enough cash to keep his or her register operational. Performance of that duty required petitioner to handle and distribute large amounts of cash throughout her shift. Petitioner had been trained in money-handling by employer and was experienced in that kind of work.

When petitioner first arrived at work on May 30, she assumed responsibility for $1,128, which was intended to keep the checkstand register tills stocked. She placed the money in a clear plastic bag, pursuant to employer's policy. She took the bag with her to her first work station of the day, the customer information desk, and locked it into a drawer immediately upon arrival. That act was also in accordance with employer's money-handling procedures. Within 20 minutes, petitioner was required to distribute some of the money to another checker, so she removed the bag from the drawer and gave $260 to the checker. She then became busy with other job duties, so she tucked the bag, full of money, under her arm. She kept the bag under her arm while she ran another errand in the store and then carried it with her to another workstation. Petitioner put the bag next to her on the side away from customer traffic. She placed an 11 x 14 inch sheet of paper over the bag and began to operate the

checkstand. After helping a few customers, petitioner was called away briefly from the checkstand. She then picked up the sheet of paper covering the money, leaving the bag near the register. The bag was stolen almost immediately by a customer. All of the above activity was recorded by in-store video surveillance cameras.

Petitioner remembered that she had left the bag within the next two to three minutes. She retraced her steps back to the checkstand, where she immediately discovered that the money was gone. She reported the theft to employer immediately and cooperated in documenting the incident. A police report was filed. Petitioner wrote an e-mail to her supervisor admitting that she had done a "bad, stupid thing" by leaving the money unsecured. She was told that she would be "written up" for her actions, and she was allowed to resume work and to finish her shift. She worked her next assigned shift on the following day as well and then had two scheduled days off. When she returned to work five days after the incident, she was sent home for the day and told to report back the next day. On the following Friday, she was terminated for her conduct. The record is devoid of evidence of previous disciplinary problems; instead, it shows that employer had rapidly promoted petitioner during her course of employment.

Petitioner was initially granted unemployment benefits by the department, which determined that she had not been fired for misconduct. Employer requested a hearing. On review, the administrative law judge sustained the award of benefits, again concluding that petitioner had not been discharged for misconduct. Employer again requested review, and the Board reversed. It reasoned that:

> "The employer provided persuasive evidence that claimant engaged in a wantonly negligent violation of the standards of behavior that the employer had the reasonable right to expect of an employee. Claimant knew that the employer required her to secure cash in a locked drawer or till. However, she carried a clear plastic bag containing hundreds of dollars in cash around the store with her while she ran an errand, rather than locking the money in a drawer or till in her checkstand. Claimant subsequently returned to the checkstand and offered to assist customers. Rather than

take the time to lock the money in a drawer before she served the customers, she set the bag of money on a work surface and covered the bag with a chart.

"Claimant's conduct in covering the bag of money with a chart indicates that she was conscious of having the money with her and knew that she needed to shield the money from other individuals. Claimant knew or should have known that the employer expected her to follow company cash handling procedures by locking up the money before she assisted customers at the checkstand, rather than taking temporary measures that might result in the money being mislaid or forgotten. If claimant had followed the employer's cash handling procedures by locking up the bag of money immediately after arriving at the checkstand, her subsequent departure from the checkstand would not have resulted in the money being stolen. Claimant's decision to ignore or delay performing the employer's cash handling procedures until she was less busy resulted in a substantial financial loss to the employer and demonstrated that she was indifferent to the consequences of her conduct. Her conduct exhibited a wantonly negligent disregard of the employer's business interests.

"Claimant's conduct cannot be excused as an isolated instance of poor judgment. Claimant delayed securing the money she had removed from the employer's safe in a drawer or till at the checkstand while she ran an errand, then chose to again delay securing the money while she waited on customers. Given the large amount of cash for which she assumed responsibility and her repeated failures to secure the money, claimant's conduct exceeded an isolated instance of poor judgment.

"Claimant's conduct also cannot be attributed to a good faith error. Claimant could hold no reasonable good faith belief that the employer would condone her decision to place the money on a work surface in her checkstand rather than in a drawer or till, given that she knew the employer's cash handling procedures required her to make certain that the money was secured in a drawer or till."

Thus, the Board concluded that employer had discharged petitioner for misconduct associated with her work, that she did not qualify for any of the exceptions to misconduct provided in the administrative regulations, and that petitioner

therefore was disqualified from receiving unemployment insurance benefits.

Petitioner argues on review that there is insubstantial evidence in the record to support the Board's findings, or, alternatively, that its findings are not supported by substantial reason. She contends that in order to deny compensation, the Board was required to find that she either acted "wilfully" or with "wanton negligence" under OAR 471-030-0038(3), and that, as those terms are defined, the record does not support either finding. She also asserts that even if she engaged in misconduct, the Board erred in concluding that her conduct was not an "isolated instance of poor judgment."

This case is governed by ORS 657.176(2)(a), which disqualifies employees who are discharged for misconduct related to their work from unemployment insurance benefits.[1] OAR 471-030-0038(3) provides the definition of misconduct. It provides, in part:

"(a)   As used in ORS 657.176(2)(a) and (b) a wilful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct.

"(b)   Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct." (Emphasis added.)

The Board did not conclude that petitioner's conduct was wilful, so the question before us narrows to the issue of "wanton negligence" and whether petitioner's conduct was an "isolated instance of poor judgment."

---

[1] ORS 657.176(2) provides, in part:

"An individual shall be disqualified from the receipt of benefits until the individual has performed service in employment subject to this chapter, or for an employing unit in this or any other state or Canada or as an employee of the federal government, for which remuneration is received that equals or exceeds four times the individual's weekly benefit amount subsequent to the week in which the act causing the disqualification occurred, if the authorized representative designated by the director finds that the individual:

"(a)  Has been discharged for misconduct connected with work[.]"

■   OAR 471-030-0038(1)(b) defines "wantonly negligent" as

> "* * * indifference to the consequences of an act or series of actions, or a failure to act or a series of failures to act, where the individual acting or failing to act is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee."

The Board determined that petitioner's conduct was a series of failures to act in accordance with her employer's money-handling procedures, because there were multiple opportunities for petitioner to have locked the money securely in a drawer or till. It found that petitioner was conscious of her conduct because she covered the money with a piece of paper to shield it from view, demonstrating that she knew the money should not have been on a counter in the checkstand in the first place. It also found that petitioner knew or should have known that her conduct was a violation of the standard of behavior expected of her as a result of her experience and training in money-handling. Each of the Board's findings that we describe is supported by substantial evidence. We assume without deciding that petitioner's conduct was a knowing failure to act in accordance with reasonable standards, or conduct that could constitute a wantonly negligent violation of work rules, or misconduct.

Our analysis does not end there. In order to deny benefits, the Board "must determine not only that the claimant engaged in misconduct as defined in OAR 471-030-0038(3)(a), but also that the exclusions to the definition of misconduct provided in OAR 471-030-0038 do not apply." *Linville v. Employment Dept.*, 146 Or App 317, 323, 934 P2d 442 (1997). After the Board decided this case, we decided *Perez v. Employment Dept.*, 164 Or App 356, 992 P2d 460 (1999). In *Perez*, the claimant was fired for misconduct after an intemperate verbal exchange occurred with his employer. He argued that his conduct was part and parcel of a single episode even though it involved separate instances of conduct on different days and that for purposes of OAR 471-030-0038(3), the conduct was an isolated instance of poor judgment. In deciding the issue presented by his argument, we

reviewed a number of cases interpreting the rule, including *Bunnell v. Employment Division*, 304 Or 11, 741 P2d 887 (1987), *Waters v. Employment Div.*, 125 Or App 61, 865 P2d 368 (1993), and *Goodwin v. Emp. Div.*, 35 Or App 299, 581 P2d 115 (1978). We concluded that whether an isolated instance of poor judgment occurred depends on "whether the incident was a 'single occurrence in the employment relationship,' and not whether the incident involved more than one component 'act' by the employee." *Perez*, 164 Or App at 366 (citation and footnote omitted). Applying that distinction to the facts in *Perez*, we concluded that the claimant's failure to follow a work directive (talking to a visitor and failing to supervise his crew adequately) and his subsequent outburst when confronted with those failures amounted to nothing more than a single occurrence in the employment relationship. We also held that the claimant's conduct was not so egregious as to put it beyond the realm of poor judgment. *Perez*, 164 Or App at 367. *See also Bunnell*, 304 Or 11.

■     In this case, we cannot discern from the Board's opinion whether it correctly applied the rule in *Perez* and the prior case law. In its opinion, the Board points to claimant's "repeated failures to secure the money" as the rationale for ruling that her conduct was not an isolated instance of poor judgment. That reasoning does not tell us whether, in the Board's opinion, the incident was an isolated instance of poor judgment within the terms of the employment relationship that consisted of several component acts or omissions, or instead, whether it was repetitive instances of poor judgment that had discrete objectives or impacts on the employment relationship.

Reversed and remanded.