Argued and submitted September 6, 2006, reversed and remanded for further proceedings consistent with this opinion January 3, 2007

## PUBLIC UTILITY COMMISSION,
*Petitioner,*

*v.*

## Silvia G. TILLOTSON,
*Respondent.*

## 05-AB-1620; A130712

150 P3d 1083

Rolf C. Moan, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge,* and Linder, Judge pro tempore.

LINDER, J. pro tempore.

---

* Brewer, C. J., *vice* Ceniceros, S. J.

## LINDER, J. pro tempore

Employer, the Public Utilities Commission, seeks judicial review of an Employment Appeals Board decision awarding claimant unemployment benefits for a 30-day period during which employer had suspended claimant without pay for disciplinary reasons. The board concluded that the acts that resulted in claimant's suspension constituted an isolated instance of poor judgment, not misconduct. We agree with employer that the board erred in that determination. We therefore reverse and remand.

We take the following facts from the board's findings of fact, which employer does not challenge. Claimant worked as a compliance specialist in employer's consumer services section. Her primary job duties included investigating complaints lodged with employer and writing reports about those investigations. Claimant's supervisor, after becoming dissatisfied with claimant's writing skills, specifically and repeatedly directed her to improve her spelling, punctuation, and grammar. Claimant believed her writing skills were adequate and repeatedly told her supervisor as much. On July 1, 2005, when claimant's writing skills had not improved to meet her supervisor's expectations, her supervisor gave her a final letter of warning and identified specific improvement goals that she was required to meet by September 30 and December 31, 2005. Claimant believed that her supervisor was being abusive and harassing in making those demands.

On August 3, 2005, claimant's supervisor asked claimant to meet with him and his superior, the administrator of the central services division, at 1:30 p.m. to discuss three specific cases that claimant had worked on. At 1:15 p.m., claimant told the administrator—not her supervisor—that she was "tired of being harassed" and would not attend the meeting. She said that, if her supervisor insisted on meeting with her, the meeting should be scheduled with claimant's lawyer.

Claimant's supervisor then gave claimant a second chance to attend the meeting, while also placing claimant on notice of the consequences of her refusal. Specifically, at

about 1:55 p.m., claimant's supervisor gave claimant a written reprimand for failing to attend the 1:30 p.m. meeting. The reprimand directed claimant to attend a meeting at 2:00 p.m. and stated that her failure to meet to discuss work-related issues would result in further discipline, up to and including dismissal. The reprimand had a place for her to sign to signify that she had read it and discussed it with her supervisor. Claimant refused to sign it, again saying that she would not do so without first discussing it with her attorney. Claimant also told her supervisor that she would not attend the 2:00 p.m. meeting without her attorney. The supervisor responded by again directing claimant to attend the meeting.

Claimant did not attend the 2:00 p.m. meeting. She did not attempt to call her attorney, either, until after 3:00 p.m. At 4:00 p.m., claimant's supervisor suspended claimant with pay through August 5 and without pay from August 8 through September 8, 2005. The ground for the suspension was claimant's repeated refusals to obey a management directive to meet with her supervisor.

Claimant applied to receive unemployment benefits for the 30-day period that she was suspended without pay. The Employment Department administratively granted claimant's request for benefits after determining that her conduct on August 3, 2005, amounted to an isolated instance of poor judgment.[1] Employer appealed the department's decision. After a contested case hearing, the ALJ concluded that "[claimant] willfully violated a standard of behavior the employer had a right to expect and willfully disregarded its interest by refusing to meet with management as directed." The ALJ further concluded that "[claimant's] violation and disregard were not an isolated instance of poor judgment. They were repeated and frequent. * * * Misconduct has been

---

[1] The department's administrative determination, which was based on a limited record, found that employer did not communicate clearly to claimant the intent of the meeting, did not specify a time and place for the meeting, and did not specify the consequences of not attending the meeting. The ALJ, after a full evidentiary hearing, and the board, on review of that record, found directly to the contrary, both in terms of how clearly employer communicated and how well claimant understood the purpose of the meeting, when and where it would be held, and what would happen if claimant did not attend.

established." As a result, the ALJ reversed the decision of the department and denied claimant's request for benefits.

Claimant appealed the ALJ's decision to the board. The board reversed the ALJ's decision and concluded that, although "[c]laimant's conduct was a willful violation of the employer's reasonable behavioral expectations[,] * * * [her] conduct can be excused as an isolated instance of poor judgment." The board acknowledged that claimant's conduct consisted of "three separate acts"—*i.e.*, twice refusing to attend the meeting, and refusing to sign the written reprimand. The board further determined, however, that those separate acts were "connected in subject matter and in proximity." Citing *Perez v. Employment Dept.*, 164 Or App 356, 366, 992 P2d 460 (1999), the board reasoned that "[m]ultiple acts may still be considered an isolated incident, if when considered together, they constitute a single occurrence in the employment relationship." Consequently, the board concluded that claimant's multiple willful violations of employer's reasonable behavioral expectations amounted to an isolated instance of poor judgment, not misconduct that disqualified claimant from benefits.

■ On judicial review in this court, employer argues that the board erred in so concluding. Employer's principal contention is that the board misapplied the pertinent administrative rule defining what constitutes an isolated instance of poor judgment and, in particular, that the board did not follow the 2004 amendments to that rule. As we explain in greater detail below, we agree.

■ We begin our discussion with an overview of the applicable statutory and administrative framework. Under ORS 657.176(2)(b), an individual who has been "suspended from work for misconduct connected with work" is disqualified from the receipt of unemployment insurance benefits. "Misconduct connected with work" is not defined by statute. Instead, the term is a delegative one that the Employment Department has policy-making authority to interpret and refine by rule. *Steele v. Employment Department*, 143 Or App 105, 109, 923 P2d 1252 (1996), *aff'd*, 328 Or 292, 974 P2d 207 (1999).

As defined by the applicable administrative rule, misconduct is "[a]n act or series of actions that amount to a willful or wantonly negligent[2] disregard of an employer's interest[.]" OAR 471-030-0038(3)(a). The rule further specifies certain acts, such as good faith errors and unavoidable accidents, that are excluded from the scope of what qualifies as misconduct. OAR 471-030-0038(3)(b). Among those exclusions is conduct that amounts to "an isolated instance of poor judgment." *Id.*

Until 2004, the rule did not further define or describe what qualifies as an "isolated instance of poor judgment." Cases involving the term, such as *Perez*, frequently required our court to determine its meaning in specific factual contexts. In doing so, we sometimes have resolved the cases before us by comparing and contrasting the fact pattern in the case before us to those presented in prior cases. In *Perez,* for example, we reviewed several cases and distilled from them a conclusion that "*our* 'isolated instance of poor judgment' analysis focuses on whether the incident was 'a single occurrence in the employment relationship,' and not whether the incident involved more than one component 'act' by the employee." 164 Or App at 366 (citations omitted; emphasis added).

■ In 2004, the department amended its rules and added OAR 471-030-0038(1)(d). That subsection of the rule expressly sets forth "standards" that "apply to determine whether an 'isolated instance of poor judgment' occurred[.]" *Id.* Paragraph A of that subsection is particularly pertinent to this case, and provides:

"The act must be isolated. The exercise of poor judgment must be *a single or infrequent occurrence rather than a repeated act or pattern* of other willful or wantonly negligent behavior."

---

[2] OAR 471-030-0038(1)(c) provides that

"wantonly negligent means indifference to the consequences of an act or series of actions * * * where the individual acting * * * is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee."

OAR 471-030-0038(1)(d)(A) (emphasis added). Thus, for a claimant's conduct to qualify as an isolated instance of poor judgment, the rule now requires the claimant to have engaged in "a single or infrequent occurrence." The rule further expressly requires that the conduct *not* be a "repeated act or pattern" of other willful or wantonly negligent behavior. We must analyze this case in light of that 2004 amendment to the department's rule. In doing so, we review the board's findings of fact for substantial evidence and its legal conclusions for errors of law. *Freeman v. Employment Dept.*, 195 Or App 417, 421, 98 P3d 402 (2004).

The facts, as found by the board, fail to satisfy the 2004 amended standard for determining what is an isolated instance of poor judgment. As the board expressly found, claimant engaged in "three separate acts" of insubordination. To be sure, all three occurred on the same day (August 3, 2005). Still, they were separate acts, divisible by time, by the circumstances that attended to each, and by claimant's awareness of those attendant circumstances.

The first of claimant's three acts occurred when she refused to meet with her supervisor at 1:30 p.m. to discuss her work performance. At that point, claimant had not been reprimanded for that particular action and was not on notice of what specific consequences could flow from her refusal. But employer made a legitimate and reasonable demand for her to meet with her supervisors to discuss her work. Despite her awareness of what was being requested of her and why, she refused.

Twenty-five minutes later, claimant was formally reprimanded for that refusal in writing. In the reprimand, employer directed her, for a second time, to meet with her superiors to discuss her work. At that point, claimant made two further choices to refuse to comply with employer's reasonable behavioral expectations of her. First, she refused to sign the reprimand—an act that did not require her to acknowledge any wrongdoing on her part; it required her only to acknowledge that she had received and discussed the reprimand with her supervisor. Next, claimant was given another chance to comply with the meeting request, and she

again refused. By then, through employer's process of progressive discipline, the stakes had changed; employer let claimant know that, and claimant understood as much. In particular, the written reprimand specifically advised claimant of the consequences of again refusing to meet; she was given a further and additional opportunity to meet; and, in the face of the formal reprimand and her awareness of the consequences of refusing, claimant made the choice to again refuse. Those three "separate" acts, as the board described them, were neither a single nor an infrequent occurrence; they represented instead multiple and severable willful acts of insubordination.

Those three separate acts also fall within the 2004 rule's express exclusion for a "repeated act or pattern" of conduct that constituted a willful disregard of employer's reasonable behavioral expectations. OAR 471-030-0038(1)(d)(A).[3] At the least, claimant's acts of refusing to meet to discuss her work, despite being given two different and distinct opportunities to do so, were "repeated" in nature. And her refusal to sign the reprimand contributed to an overall pattern of willful insubordination. All in all, claimant's actions fit squarely within what OAR 471-030-0038(1)(d)(A) expressly provides is not an isolated instance of poor judgment—repeated acts and a pattern, rather than a single act or infrequent acts, of willful or wantonly negligent disregard for her employer's interests.

In reaching a contrary conclusion, the board's order cited OAR 471-030-0038(1)(d)(A) in passing, but the board

---

[3] To argue that the record reveals repeated acts and a pattern of misconduct, employer also relies on conduct claimant engaged in while working for the Department of State Lands, where claimant was subject to a series of progressive disciplinary actions that stemmed from her attitude and her refusal to follow management instructions. Eventually, she was removed from her management position and, pursuant to state personnel policies, she was restored to her nonmanagement position with PUC, the employer in this case. The board declined to consider that evidence after concluding that it was "too distant in time to show her conduct of August 2005 was not an isolated instance of poor judgment."

Because we conclude that claimant's conduct on August 3, 2005, in and of itself qualifies as misconduct, we do not decide whether her prior conduct is relevant and is at least entitled to be considered by the board for whatever weight the board might give it. We note, however, that such past conduct at least potentially may have added relevance under the 2004 amendments to the misconduct rule insofar as those amendments consider the "pattern" reflected in a claimant's conduct.

did not examine or apply the new terms of the rule. Instead, the board relied on our holding in *Perez*, which predates the 2004 amendments to OAR 471-030-0038(1)(d). We need not decide whether the board's understanding of our holding in *Perez* and its application to this case is correct. The department had policy-making authority to further define the standards for determining what is an isolated instance of poor judgment, and the department has done so. Even if those standards are more restrictive than the one we followed in *Perez*, they are controlling.[4]

For those reasons, the board erred in concluding that claimant's actions amounted to an isolated instance of poor judgment and that claimant was entitled to unemployment benefits during her suspension. The appropriate disposition of this case is for the board, on remand, to enter an order denying unemployment benefits to claimant.[5] *See Bunnell v. Employment Division*, 304 Or 11, 17, 741 P2d 887 (1987) (where facts supported only one conclusion as to whether claimant's act amounted to an isolated instance of poor judgment, board was required on remand to enter an order accordingly).

Reversed and remanded for further proceedings consistent with this opinion.

---

[4] For that reason, our decisions in this area that predate the new rules should be relied on with caution.

[5] The decision that claimant's actions constituted misconduct requires interpretation of OAR 471-030-0038(1)(d)(A). The department's interpretation of its own rule deserves deference and will be accepted unless it is implausible. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). Where, as here, the department's interpretation is based on an incomplete factual record, we ordinarily remand with instructions to determine the department's interpretation under the factual record developed by the ALJ, unless the facts support only one conclusion. *Ring v. Employment Dept.*, 205 Or App 532, 537, 134 P3d 1096 (2006); *see also Bunnell v. Employment Division*, 304 Or 11, 17, 741 P2d 887 (1987) That is the situation in the present case.