Submitted on record and petitioner's brief May 14, reversed and remanded for entry of order denying benefits August 29, 1990

## WEYERHAEUSER COMPANY,
*Petitioner,*

*v.*

## EMPLOYMENT DIVISION
### and Clarence Ransom,
*Respondents.*

### (89-AB-1031; CA A62204)

796 P2d 385

Scott T. Cliff, Mark M. Loomis and Spears, Lubersky, Bledsoe, Anderson, Young & Hilliard, Portland, filed the brief for petitioner.

Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance for respondent Clarence Ransom.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Employer seeks review of a determination of the Employment Appeals Board (EAB) that claimant was not discharged for "misconduct," ORS 657.176(2)(a), and that he is therefore entitled to unemployment compensation. We reverse and remand.

We paraphrase EAB's findings of fact. Claimant worked for employer as an "on-call" laborer until he was discharged in February, 1989.[1] His work included removing corrugated cardboard boxes from the assembly line and feeding them into a strapping machine for packaging. On the day before he was discharged, the assembly line became backed up in his work area. When his shift supervisor asked for an explanation, claimant became incensed and asserted that he needed more help. For nearly 30 minutes a debate ensued, in which claimant swore at his supervisor, called him obscene names and, at times, loudly argued his point within inches of the supervisor's face.

After the confrontation, claimant returned to his work area to help with the back up. While he was working on the line, he told a different shift supervisor that he was going to "kick [the supervisor's] fucking ass." At that point, claimant was suspended pending further investigation. He was told to talk to the plant foreman the next day.

The plant foreman, after interviewing the supervisors and a witness, had a separate meeting with claimant to hear his version of the incident. The foreman had concluded that, unless claimant had an acceptable explanation for his behavior, he would be discharged. Claimant's version was that his shift supervisor had been the aggressor, had poked him in the chest and had used foul and obscene language and that he, claimant, was trying to calm the supervisor.[2]

ORS 657.176(2)(a) provides that a worker is disqualified from receiving unemployment compensation if the

---

[1] Claimant submitted a letter of resignation. However, it was in response to an inevitable discharge and the parties proceed on the basis that claimant was fired.

[2] He gave the same version of events at the hearing and the hearings officer specifically found that claimant was not credible. Both the hearings officer and EAB adopted the supervisor's version of the confrontation.

worker "[h]as been discharged for misconduct connected with work." "Misconduct" is defined in OAR 471-30-038(3) as

"a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interest, or recurring negligence which demonstrates wrongful intent is misconduct. Isolated instances of poor judgment * * * are not misconduct for purposes of denying benefits under ORS 657.176."

EAB concluded:

"[C]onsidering all of the circumstances, we conclude that claimant's angry outburst was a wilful violation of the employer's interests. It is very clear that claimant stepped over the lines of acceptable behavior when he called his supervisor foul names. Claimant's behavior in this regard was intentional and therefore misconduct under [ORS 657.176(2)(a)]. However, because claimant was reacting out of stress and frustration and because the employer had never experienced any similar behavior from the claimant, we conclude that the entire incident resulted from an isolated instance of poor judgment on the claimant's part.

"Claimant's angry remark to another supervisor was made while claimant was still agitated from the previous confrontation and cannot be considered to be an additional act of insubordination. * * * [W]e conclude that the remark amounted to isolated poor judgment arising from the initial confrontation with his supervisor."

■ Even a wilful act of an employee in disregard of the employer's interest can be an isolated instance of poor judgment. In *Bunnell v. Employment Division,* 304 Or 11, 741 P2d 887 (1987), the court applied that reasoning to reverse denial of compensation to the claimant, who had been discharged for an offensive outburst directed toward her supervisor. The court held that, because the claimant promptly apologized to her supervisor and that the brief outburst was followed by immediate job performance, "[t]he findings demonstrate a classic example of an isolated instance of poor judgment which, without more, is not misconduct." 304 Or at 17.

■ However, we conclude that this case, unlike *Bunnell,* does not involve "a classic example of an isolated instance of poor judgment." The findings indicate that, after claimant became incensed over a reasonable inquiry by his supervisor,

he engaged in a prolonged debate during which he insulted and physically intimidated the supervisor. After that confrontation, he continued the insubordinate tirade and physically threatened the supervisor. The next day his version of the confrontation was considerably at variance with that of all other witnesses and he essentially accused the supervisor of verbally attacking him. The evidence indicates that claimant's conduct was not the type of conduct that can be excused as poor judgment. Rather, it was a deliberate disregard of employer's interests that was severe enough that it cannot be considered an isolated instance of poor judgment.

Reversed and remanded for entry of order denying benefits.