Argued and submitted July 12, affirmed August 21, reconsideration denied
November 6, petition for review denied November 26, 1991 (312 Or 525)

Gary E. HALLING,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION
and Salmon Street Liquor & Mixer Store,
*Respondents.*

(90-AB-1433; CA A67212)

816 P2d 1173

Michael H. Bloom, Portland, argued the cause and filed the brief for petitioner.

Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

No appearance by respondent Salmon Street Liquor & Mixer Store.

Before Joseph, Chief Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., dissenting.

**EDMONDS, J.**

The Employment Appeals Board (EAB) held that, because claimant's discharge was for "misconduct connected with his work," he is disqualified from receiving unemployment benefits. ORS 657.176(2)(a); OAR 471-30-038(3). Claimant seeks review, and we affirm.

EAB adopted the referee's finding, in part:

"(1) The claimant worked for the employer from August 25, 1987, until April 9, 1990. (2) For at least the last two years, he was the manager. (3) As manager, he frequently made schedule changes. (4) The owner was usually aware of the changes and approved them.

"(5) On March 26, 1990, the claimant received a copy of the employer's rules of conduct. (6) One rule states that 'Abusive language, whether directed to a customer, the manager, or co-worker, will not be tolerated and will result in termination.' * * *

"(7) On April 9, 1990, the claimant mistakenly reported for work. (8) He had not read the schedule on April 7 and assumed he had to work on April 9. (9) The claimant became upset because he noted on the schedule he would have to work two consecutive Saturdays. He believed he would be given alternate Saturdays off. (10) He noticed that on the second Saturday, he would be working with an employee who he believed was incompetent and would not be able to cover for him so he could take a lunch break. (11) The claimant asked another employee to trade with the scheduled employee. (12) The other employee agreed, and they went to the schedule to trade shifts between the two employees.

"(13) The owner saw them changing the schedule and told them to leave the schedule alone. (14) The claimant became belligerent and said he would not work with the scheduled employee. (15) The owner said there would be no changes. (16) He wanted the scheduled employee to get more training and experience and wanted to schedule the employee for more hours because he earned $.50 less per hour than the employee who was willing to trade shifts.

"(17) The claimant became very upset and called the owner an '[expletive deleted]' and asked the employer if he was going to fire him. (18) The owner told the claimant that he should not use abusive language to the owner and threatened to discharge him if he did not apologize."

EAB added some of its own findings to the referee's findings:

"(19) After the owner told claimant he should not direct abusive language to the owner and threatened to discharge claimant if he did not apologize, claimant stated, 'Fire me then, you [expletive deleted].' The owner then discharged claimant.

"(20) The claimant had received no prior warnings for being abusive to the employer, co-workers, or customers. (21) He was discharged solely for his abusive outburst to the owner on April 9, 1990. (22) Some employees used profanity as idle banter or in kidding each other. (23) The employees did not use profanity in anger and did not direct profanity at the owner."

EAB concluded that claimant's conduct that prompted his discharge was work-connected and was not an isolated instance of poor judgment. Claimant argues that EAB's finding that his conduct was more than an isolated instance of poor judgment is not supported by substantial evidence. Substantial evidence exists to support a finding if the record, viewed as a whole, would permit a reasonable person to make that finding. ORS 183.482(8)(c).

ORS 657.176(2)(a) provides that an individual is disqualified from receiving unemployment benefits if the discharge was for misconduct connected with work. OAR 471-30-038(3) provides, in part:

"[M]isconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interests, or recurring negligence which demonstrates wrongful intent is misconduct. Isolated instances of poor judgment, good faith errors, * * * absences due to illness, * * * or mere inefficiency resulting from lack of job skills or experience are not misconduct for purposes of denying benefits under ORS 657.176."

Applying those provisions, EAB concluded:

"Claimant's conduct did not constitute an isolated instance of poor judgment. The owner directed claimant not to change the schedule. Claimant became belligerent and said he refused to work with the scheduled employee. Claimant's refusal to work with the scheduled employee was a wilful violation of the standards of behavior the employer had a right to expect, i.e., that claimant would work with

anyone with whom the employer scheduled him. Claimant's use of profanity after he became upset at being scheduled with the employee also violated the employer's standards as set forth above. The owner then expressly told claimant not to direct abusive language to him and threatened to discharge claimant. Claimant responded with still more abusive language. Given claimant's pattern of behavior and multiple violations of employer's standards, his conduct was neither isolated nor poor judgment."

Claimant argues that EAB's conclusions are contrary to the holding in *Bunnell v. Employment Division,* 304 Or 11, 741 P2d 887 (1987). However, in *Bunnell,* the claimant's outburst was not followed by repetitious conduct in the face of a warning to cease. The court noted that there was no further misconduct by claimant:

"Other than this isolated verbal outburst, followed by immediate job performance, there is nothing in this record to support the more serious finding of misconduct." 304 Or at 17.

Here, there is substantial evidence of repetitive misconduct. Claimant's multiple violations of employer's standards, including his use of abusive language despite a warning by employer to cease, supports EAB's conclusion.

Affirmed.

**RIGGS, J.,** dissenting.

I disagree with the majority's conclusion that claimant's conduct was work-connected misconduct. This case is virtually indistinguishable from *Bunnell v. Employment Division,* 304 Or 11, 741 P2d 887 (1987). Whether or not *Bunnell* was correctly decided, we are bound by it. There is no substantial evidence in this record that would permit EAB to make a finding that claimant's act was not an isolated instance of poor judgment. EAB and the majority's characterization of his single outburst as "repetitive misconduct" is specious. As in *Bunnell,* claimant used profanity more than once during the course of a brief, single, heated exchange. Two or three profane words spoken in the course of a few minutes simply does not amount to "repetitive misconduct" that would permit a finding that it was not an isolated instance of poor judgment.

For these reasons, and for the reasons stated in my dissent in *Velez v. Employment Div.,* 106 Or App 349, 352, 807 P2d 327 (1991), I dissent.