Argued and submitted January 3, affirmed May 1, 2003

Craig JOHNSON,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Excell Marketing,
*Respondents.*

01-AB-1401; A115897

67 P3d 984

David A. Schuck argued the cause for petitioner. With him on the briefs were A. E. Bud Bailey and Bailey Pinney & Associates, LLC.

Jennifer Bouman argued the cause for respondent Excell Marketing. On the brief was Russell S. Collins.

No appearance for respondent Employment Department.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

KISTLER, J.

Schuman, J., dissenting.

**KISTLER, J.**

The Employment Appeals Board (board) held that claimant was disqualified from receiving unemployment benefits because he intentionally submitted a false work report. On review, claimant does not dispute that he submitted a false report. Rather, he argues that doing so should not disqualify him from receiving benefits. We affirm.

Claimant worked for Excell Marketing, a trading card distributor, as a territory account manager, and his position required him to service various retail outlets throughout Oregon and southwest Washington. Employer required claimant to submit, at the beginning of each week, an itinerary of the work that he expected to accomplish. At the end of each week, claimant was required to file a "call report" that reflected the work that he had actually done that week. Claimant had the discretion to set his own itinerary each week, although he was generally expected to visit four to five stores each day. Employer expected that most of those visits would take place during the daytime work hours, although occasional evening and weekend visits were permitted. Employer also expected, as stated in the employee handbook, that employees would not falsify company records, that they would keep accurate time records, and that they would not engage in dishonest conduct.

Claimant's itinerary for February 26, 2001 through March 2, 2001, the time period that is relevant in this case, showed that he had an approved vacation day on Monday, February 26, but that he expected to make calls in southern Oregon and Portland the rest of the week. Claimant spent the weekend in Los Angeles and intended to leave for Oregon on Monday, February 26, to resume his job duties the next day. He was not feeling well, however, and delayed his departure. Claimant did not arrive in Oregon until Wednesday evening. He made one sales call that evening in Grants Pass at approximately 10:00 p.m. and then drove to Portland to resume work there Thursday morning.

When claimant submitted his call report for the week of February 26 through March 2, he reported that he had visited stores in Grants Pass, Roseburg, and Eugene on

Tuesday, February 27, a day that he was in California. He also reported that he had visited seven stores in Portland on Wednesday, February 28, when in fact he was en route from California to Oregon that day and made only one call that night. Claimant did, however, perform work on evenings and on Saturday in order to complete the calls that he reported making on February 27 and 28.

Several months later, employer matched claimant's call report against his gas credit card receipts. Employer discovered that the locations shown on the credit card receipts conflicted with the work locations that claimant had reported visiting. Employer discharged claimant for falsifying his weekly call report.

Claimant applied for unemployment benefits. Relying on OAR 471-030-0038, the Employment Department (department) denied claimant benefits. It reasoned that he was "discharged for misconduct connected with [his] work" and that his "falsification of the report about [his] work was a willful disregard of the employer's interest." Claimant appealed, and an administrative law judge (ALJ) upheld the denial. Claimant appealed to the board, which also upheld the denial. The board reasoned:

> "The employer discharged claimant for falsifying his weekly call report * * *. The employer reasonably expected claimant to be honest in documents he submitted to the employer for work-related purposes. We are persuaded claimant understood that expectation as a matter of common sense and because he admitted that he knew the employer expected accurate weekly call reports.

> "* * * When claimant represented to the employer that he had worked in southern Oregon on February 27, 2001, he willfully violated the employer's standards.

> "Claimant also willfully violated the employer's standards when he represented that he performed work in the Portland metropolitan area on February 28. * * *

> "Claimant's conduct was too serious to constitute an isolated instance of poor judgment. Claimant represented he performed work he did not perform for the employer on the

days he asserted. Claimant worked without ongoing supervision. The employer needed to have assurances that claimant was honest when not under direct supervision. Claimant's conduct demonstrated that the employer could not rely on his integrity."

An employee who "[h]as been discharged for misconduct connected with work" is disqualified from receiving unemployment benefits. ORS 657.176(2)(a). The department has defined the term "misconduct" by rule as

"willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee * * *. An act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest is misconduct."

OAR 471-030-0038(3)(a). However, the department has also provided that

"[i]solated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct."

OAR 471-030-0038(3)(b).

■ On review, claimant raises two assignments of error. In his first assignment of error, claimant contends that the board's initial conclusion—that he willfully violated standards of behavior that employer had the right to expect of him—is not supported by substantial evidence. See OAR 471-030-0038(3)(a). Claimant does not dispute that he represented, on two different days on his call report, that he was in a particular location performing his work duties when, in fact, he was neither at that location nor performing his duties as he reported. He argues, however, that employer failed to prove that submitting a false work report violated company policy. That argument fails. There was evidence before the board that employer had a policy that prohibited dishonesty as well as filing inaccurate company records—a prohibition that the board reasonably could find encompassed claimant's actions.[1]

---

[1] Claimant presented this policy during his case before the board. Further, claimant's direct supervisor testified that, consistently with the written policy,

Claimant argues alternatively that, because he actually performed the work at a later date and time, his actions did not constitute a willful violation of his employer's standards. The information, however, that claimant put on his call report was false and is not made any less so by the fact that he eventually performed the work. Substantial evidence supports the board's finding that claimant willfully violated his employer's policy against submitting false work reports.

In his second assignment of error, claimant contends that, even if submitting a false report were a willful violation of his employer's standards, it was only an "isolated instanc[e] of poor judgment" and thus not misconduct that should disqualify him from receiving unemployment benefits. As the parties frame the issue on review, it turns on the proper interpretation of the department's rule defining "misconduct." Before turning to that question, we first identify "the responsible agency whose order is being reviewed" and then address our standard of review. *See McPherson v. Employment Division*, 285 Or 541, 591 P2d 1381 (1979).

On the first issue, the court explained in *McPherson* that, even though we review the board's order, the legislature did not assign the board any policy-making authority. Rather, as the court explained in *McPherson*,

> "the administration of [the unemployment compensation] statute is entrusted to the [Director of the Employment Department]. He [or she] is directed to 'determine all questions of general policy and promulgate rules and regulations and be responsible for the administration of this chapter.' ORS 657.610. Determinations· with respect to a particular claimant's eligibility are made by the [director's] 'authorized representative.' ORS 657.176(1), ORS 657.265. If the determination is contested, it becomes the subject of a hearing before a referee, who is appointed by the [director]. ORS 657.650(1). A referee's decision, however, is not subject to the review and approval or disapproval of the [director] but rather to review by the Employment Appeals Board. Indeed, the [Employment Department] may be the party seeking review of the referee's decision. In other words, the [director] is the 'agency' for setting the policy of

"there's basically three things you can be immediately terminated for, and they're basically lying-which I think this is one that falls in this category."

the [department]. His [or her] authorized representative is the 'agency' making the initial decision of a claim, which becomes operative if not contested. Only if the decision of the authorized representative is contested does the referee conduct and decide the 'contested case.' Thus, [the referee] serves in a reviewing rather than a policy-determining capacity."

285 Or at 546-47(footnote omitted).[2]

Having identified the responsible agency, we turn to our standard of review. On that issue, ORS 657.176(2)(a) provides that an employee who "[h]as been discharged for misconduct connected with work" is disqualified from receiving unemployment benefits. The statute does not define the term "misconduct," and we have held that it is a delegative term that " 'calls for completing a value judgment that the legislature itself has only indicated[.]' " *Sun Veneer v. Employment Div.*, 105 Or App 198, 201 n 2, 804 P2d 1174 (1991) (quoting *McPherson*, 285 Or at 550). As the court explained in *McPherson*,

"[j]udicial review of such evaluations, though a 'question of law,' requires a court to determine how much the legislature has itself decided and how much it has left to be resolved by the agency. For an agency decision is not 'unlawful in substance,' ORS 183.482(8), *supra*, if the agency's elaboration of a standard like ['misconduct'] is within the range of its responsibility for effectuating a broadly stated statutory policy."

285 Or at 550.

Consistently with its policy-making role, the department has promulgated rules to define the type of misconduct that will disqualify a worker from receiving unemployment benefits. The rules make clear that "isolated instances of poor judgment" are not disqualifying, but they do not specifically address what constitutes poor judgment or when a single act will be too severe to constitute poor judgment. Resolution of those questions requires interpretation of the rules. If the department had interpreted its rule at the conclusion of a

---

[2] When *McPherson* was written, ORS 657.610 entrusted the assistant director of the Employment Division with the authority that it now gives the director of the Employment Department.

contested case proceeding, there would be no question that we would defer to that interpretation as long as it was plausible. *See Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 143, 881 P2d 119 (1994). Here, however, the authorized representative of the department applied the rule to claimant and concluded that claimant had engaged in misconduct that disqualified him from receiving unemployment benefits. The ALJ affirmed after considering additional evidence that the parties submitted, as did the board. Because neither the ALJ nor the board adopted the rule defining misconduct, we owe their rule interpretation no deference. The question remains, however, whether we owe the authorized representative's interpretation any deference.

■    The court's decision in *McPherson* guides our resolution of that issue. In *McPherson*, the Supreme Court explained that it was unclear whether the department had understood that the legislature intended to permit it to determine, within statutory limits, what constituted "good cause." 285 Or at 551-54. As the court observed, the department may have assumed that, given our decisions defining good cause, it had no policy-making role to play. *Id.* at 557. The court accordingly concluded:

> "We cannot discern what criteria of 'good cause' the agency might have applied on its own in the absence of that assumption. This does not mean that on the present record the Court of Appeals or this court might not have reached the same result. That, however, is not our assignment but the [department's], subject only to review whether its assessment of the kind of reasons that are 'good cause' to leave employment is 'unlawful in substance.' For these reasons, the case must be remanded to the [department] for reconsideration by the [director's] authorized representative in the light of this opinion."

*Id.* The court thus recognized that the authorized representative could, on remand, exercise the authority delegated to the department and determine, at least initially, how the term "good cause" should be applied. *Id.*; *see Trebesch v. Employment Division*, 300 Or 264, 276-77, 710 P2d 136 (1985).[3] Consistently with the court's disposition of the case

---

[3] If the authorized representative has acted inconsistently with the director's policy choice, the director can exercise his or her authority to review the decision and clarify the department's policy. *See Trebesch*, 300 Or at 276-77.

in *McPherson*, we conclude that the authorized representative's interpretation of the department's rule is entitled to the same level of deference that we would give the department's interpretation; that is, we should defer to the department's (or the authorized representative's) interpretation as long as it is plausible. *See Don't Waste Oregon Com.*, 320 Or at 143.

In determining whether the department's interpretation of its own rule is plausible, we are guided by the Supreme Court's and our precedent. Interpreting the department's rule, the Supreme Court has explained "that [even] an isolated wilful act of an employee can amount to misconduct if more severe than poor judgment." *Bunnell v. Employment Division*, 304 Or 11, 16-17, 741 P2d 887 (1987). However, when an employee engages in an isolated verbal outburst, followed by an immediate apology, the court has explained that the employee's behavior can be characterized only as an isolated instance of poor judgment. *Id.* at 17; *see Perez v. Employment Dept.*, 164 Or App 356, 364-65, 992 P2d 460 (1999) (reaching the same conclusion when a claimant told his supervisor to "stick it" one day but apologized the next). Conversely, in *City of Grants Pass v. Employment Division*, 94 Or App 328, 332, 765 P2d 237 (1988), we held that a police officer's intentional lie in filing an official report was too serious, as a matter of law, to qualify as an isolated instance of poor judgment.

This case falls somewhere between those two extremes, although it is closer to *City of Grants Pass*. In both cases, the decision to file a false report was deliberate. It was not the sort of spontaneous outburst, followed by an immediate apology, that made the employee's actions excusable in *Bunnell* and *Perez*. Moreover, the nature of the police officer's responsibilities informed our conclusion in *City of Grants Pass*, 94 Or App at 331-32, that his deliberate breach of those responsibilities precluded his actions from being seen as simply poor judgment. Here, the unsupervised nature of claimant's work put a premium on honestly reporting his efforts on employer's behalf. In the same way that the employee's dishonesty in *City of Grants Pass* was a serious breach of his employer's legitimate expectations, so too was claimant's dishonesty here. We need not decide, as we did in *City of Grants Pass*, that claimant's conduct could not be considered, as a

matter of law, poor judgment. It is sufficient to say in this case that the department's conclusion reflects a permissible interpretation of its own rule.[4]

The dissent would reach a different conclusion. In its view, several "common-sense criteria" should be considered in determining when something less than criminal conduct but more egregious than back-talk constitutes poor judgment. 187 Or App at 452-53 (Schuman, J., dissenting). Applying those criteria, it would hold that "what this case presents is poor judgment and nothing more." *Id.* at 453 (Schuman, J., dissenting). Whatever merit the dissent's suggestions might have as a policy matter, the question of which criteria the department should employ in interpreting its rule is, in the first instance, for the department. *McPherson*, 285 Or at 557. Only if we can say that the department's interpretation is not plausible may we override its judgment. *Don't Waste Oregon Com.*, 320 Or at 143. Considered on its own terms, the department's rule focuses on the nature of the employee's actions, not on the criteria that the dissent would employ. *See* 187 Or App at 450 n 4. This is not to say that the department may not consider those criteria, only that the department was not required to give them primacy.

Affirmed.

**SCHUMAN, J.,** dissenting.

Claimant missed a day of work due to illness and then completed his weekly allotment of assigned calls before the next week began by making extra calls on the days immediately after he recovered. He submitted a timely report listing the calls he made but indicating he made them on

---

[4] In addition to isolated instances of poor judgment, OAR 471-030-0038(3)(b) excludes "good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, [and] mere inefficiency resulting from lack of job skills or experience" from the definition of misconduct. The department has thus grouped "isolated instances of poor judgment" with actions that are mitigated either by the employee's lack of fault (unavoidable accidents, absences due to illness, and mere inefficiency due to lack of experience) or by the employee's good intentions (good faith errors). We assume that words in a series share the same quality, *State v. Ott*, 297 Or 375, 392, 686 P2d 1001 (1984) (applying the principle of *noscitur a sociis*), and the focus in the remainder of the rule is not on the degree of harm that the employee's actions cause but on the absence of culpability on the employee's part.

Tuesday through Friday when, in fact, he made them on Wednesday through Saturday. The report was otherwise accurate. He did not claim to have done work that he did not do. The quality of his performance met his employer's and his customers' expectations, as it always had in the past. A few weeks later, his employer discovered the falsification of dates—the first such offense by claimant—and fired him without warning. The majority affirms the Employment Appeals Board's denial of unemployment benefits based on the conclusion that this single act was a "willful or wantonly negligent violation" of the employer's legitimate standards and not merely an "[i]solated instance[ ] of poor judgment." OAR 471-030-0038(3)(a), (b). I agree with the first half of this conclusion; claimant willfully falsified a report, and his employer had a right to expect absolute honesty. I respectfully but emphatically disagree that his misconduct could plausibly be called anything more than an isolated instance of poor judgment.

Employer and claimant agree that claimant's misconduct was a "single incident." To resolve this case, therefore, we need to review the interpretation of only the last two words of the phrase "isolated instances of poor judgment." As the majority correctly deduces (despite what might appear to be contrary language in *Bunnell v. Employment Division*, 304 Or 11, 17, 741 P2d 887 (1987)), we must affirm the department's interpretation if it is "plausible * * * [and] cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law[.]" *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).

Analyzing the wording of the rule and, as an "other source of law," *id.*, prior cases decided by this court and the Supreme Court, the majority locates two "extremes." 187 Or App at 449-50. At one extreme are cases like *Bunnell* and *Perez v. Employment Dept.*, 164 Or App 356, 992 P2d 460 (1999), in which the courts held that verbal outbursts followed by apologies, although demonstrating insubordination and disrupting the workplace, were merely poor judgment. At the other extreme is *City of Grants Pass v. Employment Division*, 94 Or App 328, 765 P2d 237 (1988), in which we

held that a police officer's conduct transcended poor judgment when he fabricated facts in an affidavit that he then used to obtain a warrant to search an innocent citizen's house. The majority concludes that "[t]his case * * * is closer to *City of Grants Pass*." 187 Or App at 449.

A review of the cases dealing with workers who were denied benefits based on single, isolated incidents of misconduct leads me to a different conclusion. The courts have held that arguing with supervisors or fellow workers, even loudly, obscenely, and in the presence of others, is poor judgment. *Bunnell*, 304 Or at 13, 17; *Perez*, 164 Or App at 367; *Goodwin v. Emp. Div.*, 35 Or App 299, 581 P2d 115 (1978). On the other hand, actions transcending poor judgment (in addition to the false swearing in *City of Grants Pass*) occurred when a hotel employee was convicted of shoplifting from a store whose manager was a frequent guest at the hotel, *Levu v. Employment Dept.*, 149 Or App 29, 941 P2d 1056 (1997); when an employee goaded a coworker into a physical altercation, *Velez v. Employment Div.*, 106 Or App 349, 807 P2d 327 (1991); when an employee physically threatened a supervisor, *Weyerhaeuser Co. v. Employment Div.*, 103 Or App 143, 796 P2d 385 (1990); and when an employee committed theft from her employer, *see Fred Meyer, Inc. v. Employment Div.*, 103 Or App 404, 797 P2d 1066 (1990) (*dictum*).

The most obvious dividing line between poor judgment and more serious misconduct is criminality: In every case where the courts found that a single work-related incident disqualified the claimant from benefits, the incident was serious enough to constitute a crime. On the other hand, where the courts found the single incident to be mere poor judgment, the incident was nothing more than argument, back-talk, or verbal insubordination. Between these extremes, we might be guided by certain common-sense criteria such as the extent and nature of the harm inflicted on employers or coworkers. Willfulness, although not controlling, is relevant. Beyond those rough guidelines, we are in the realm of the subjective and the ad hoc.

My subjective ad hoc judgment is that claimant's action was, as the court found the claimant's actions in *Bunnell*, "a classic example of an isolated instance of poor

judgment which, without more, is not misconduct * * *." 304 Or at 17. It involved no criminal activity. It happened only once. Although it was intentional in the sense that it did not occur by accident, we have no way of knowing whether it was a spur-of-the-moment impulse or a calculated decision. It inflicted no concrete damage to employer's authority or to any coworker. It cost employer no money. Indeed, employer testified that claimant would have received permission to reschedule if he had asked for it. The only "damage" employer claims is its loss of trust in an employee who works without supervision. Although trust in employees is a valuable asset, its value is directly linked to what the employee can be trusted to do or not to do. An employee who lies about when he did his work inflicts much less harm than an employee who lies about whether he did his work at all; the former lies while the latter lies and steals. In short, claimant's misconduct was minor, isolated, and inflicted no concrete harm on anybody. Unless we are willing to say that lying is a *per se* disqualifier for unemployment benefits regardless of its frequency, seriousness, or relevance to employer's mission—a position with serious implications for any employee who has ever, for example, billed for the hour between 4:00 and 5:00 when, in fact, she worked from 4:00 to 4:30, chatted briefly with a coworker, and then worked from 4:35 to 5:05—what this case presents is poor judgment and nothing more.

I dissent.