Argued and submitted August 4, 2003, affirmed January 14, 2004

DOUBLE K KLEANING SERVICE, INC.,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and Robert Dwyer,
*Respondents.*

02-AB-1901; A119660

82 P3d 642

Mary Kim Wood argued the cause for petitioner. With her on the brief was Mary Kim Wood, P.C.

Richard D. Wasserman, Assistant Attorney General, waived appearance for respondent Employment Department.

No appearance for respondent Robert A. Dwyer.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

SCHUMAN, J.

---

* Wollheim, J., *vice* Kistler, J., resigned.

**SCHUMAN, J.**

Claimant was fired by his employer, Double K Kleaning Service, Inc., after a verbal altercation with its owner. The Employment Department's authorized representative, an administrative law judge (ALJ), and the Employment Appeals Board (EAB) all concluded that claimant was entitled to unemployment benefits because the incident leading to his termination was an isolated incident of poor judgment and therefore not misconduct. Employer seeks judicial review. We review EAB's legal conclusion for errors of law and the facts underlying the conclusion for substantial evidence in the record. ORS 183.484(8)(a), (c). We affirm.

An employee who "[h]as been discharged for misconduct connected with work" is disqualified from receiving unemployment benefits. ORS 657.176(2)(a). The department has defined "misconduct" as a "willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee * * *." OAR 471-030-0038(3)(a). "Wantonly negligent" conduct is "indifference to the consequences of an act * * * where the individual acting * * * is conscious of his or her conduct and knew or should have known that his or her conduct would probably result in a violation of the standards of behavior which an employer has the right to expect of an employee." OAR 471-030-0038(1)(b). The department has also provided that "[i]solated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are *not* misconduct." OAR 471-030-0038(3)(b) (emphasis added). The issue in this case is whether EAB correctly concluded that claimant's argument with employer's owner fell within the "isolated instances of poor judgment" exception.

The EAB found the following facts, which, with one possible exception discussed below, are not disputed:

"(1) Claimant worked for [employer], at various times as a janitor or manager, from April 13, 2001, to March 6, 2002. (2) On Tuesday, March 5, 2002, claimant asked the employer's owner and president for time off on March 8,

2002, to attend a doctor's appointment. (3) The president granted claimant's request. (4) On March 6, 2002 the owner arrived at claimant's job site with another employee and asked claimant to train the employee to perform claimant's job while claimant attended his doctor's appointment. (5) The owner told claimant that because two employees were performing claimant's work, she expected them to complete the shift early. (6) Claimant became upset because he believed that training another employee would not reduce his work time; however, he and the trainee did finish the shift somewhat early. (7) Later, claimant again spoke to the owner. (8) He requested that the employer give him the entire day off on March 8, 2002. (9) The owner became upset at claimant's request and believed claimant was acting hypocritically, by first complaining that a trainee was costing him hours of work, then asking for extra time off on another day. (10) She denied claimant's request for additional time off on March 8, 2002, insisting that he return to work if he was able to do so, after his doctor's appointment. (11) Claimant became angry at the owner's decision. (12) He raised his voice, gesticulated with his arms, and used terms such as 'damn,' and 'hell.' (13) He criticized the employer's treatment of him and said that he was feeling angry. (14) Eventually, he said 'I'm done,' and turned and walked away. (15) The owner told claimant that if he continued such disrespectful behavior, the employer would discharge him. (16) Claimant replied, 'Fine. Fire me then.' (17) The owner concluded that claimant held no respect for her authority and that the situation was unsalvageable. (18) Consequently, she discharged him. (19) Claimant and the owner had had heated discussions before, but claimant had never before behaved in a manner that the employer considered insubordinate or a violation of its standards."

(Internal citations omitted.) Claimant applied for unemployment insurance benefits. After reviewing claimant's application and employer's response, the Employment Department's authorized representative awarded benefits, concluding that claimant's conduct was an isolated instance of poor judgment. That decision was affirmed by an ALJ and subsequently by EAB.

Before this court, employer contends that EAB made both factual and legal errors. It does not, however, identify

which of EAB's factual findings is allegedly erroneous. *See* ORAP 5.45(3) ("Each assignment of error shall identify precisely the * * * factual * * * ruling that is being challenged."). In its "Summary of Argument," employer states that claimant "admitted that he had become verbally upset with his employer in the past and had heated discussions with her. In other words, this was not an isolated incident, but merely the latest and most public." From this statement, we can infer that employer disputes the second part of EAB's finding (19), "Claimant and the owner had had heated discussions before, but *claimant had never before behaved in a manner that the employer considered insubordinate or a violation of its standards.*" (Emphasis added.) Because employer and EAB agree that claimant and the owner had previously had heated discussions, employer's contention regarding an error of fact must focus on EAB's finding that these earlier incidents were not considered insubordinate or a violation of employer's standards.

The record, however, supports EAB's finding. When the ALJ asked employer's owner whether claimant "ever acted like this in the past," the owner responded, "Oh, he'd gotten agitated over this, but not like this." The ALJ then asked, "I mean had he ever spoken to you in such a manner before?" The owner responded, "No." Claimant testified that he and the owner "had a couple of heated discussions before," but "[s]he had never said anything about it before." He also admitted that he had spoken with the owner "in this same manner in the past," but added, "I never—you know, she never told me before that this was grounds for—I mean I wasn't cussing her." No contrary testimony occurred. EAB's finding (19) is supported by substantial evidence.

The remaining question, then, is whether the facts describe an incident of "poor judgment" under OAR 471-030-0038(3)(b). Our recent opinion in *Johnson v. Employment Dept.*, 189 Or App 243, 248, 74 P3d 1159, *modified*, 191 Or App 222, 81 P3d 730 (2003), describes and explains the standard of review we apply in deciding this issue:

> "[The] issue involves interpretation of OAR 471-030-0038(3)(b), which provides that '[i]solated instances of poor judgment * * * are not misconduct.' The interpretation of

rules is a legal question that we review for errors of law. *McPherson v. Employment Division*, 285 Or 541, 550, 591 P2d 1381 (1979). That conventional description of the standard, however, does not fully capture the nuances of our role as a reviewing court. In *Sun Veneer v. Employment Div.*, 105 Or App 198, 201 n 2, 804 P2d 1174 (1991), we held that the term 'misconduct' is a delegative term that calls for the agency to 'complet[e] a value judgment that the legislature itself has only indicated.' Therefore, our interpretation should show significant deference to the agency's own interpretation if it 'is within the range of its responsibility for effectuating a broadly stated statutory policy.' *Johnson v. Employment Dept.*, 187 Or App 441, 447, 67 P3d 984 (2003) (quoting *McPherson*, 285 Or at 550). Further, in a situation such as this involving EAB's review of an ALJ's decision, which, in turn, followed the department's administrative decision, 'the agency' is *the department*, and the relevant articulator of department policy is the authorized representative who rendered the original administrative decision. * * * Thus, * * * we give no deference to the ALJ's or EAB's determination but instead defer to the authorized representative's, unless it is implausible, that is, inconsistent with the rule's text, context, or any other source of law. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 143, 881 P2d 119 (1994)[.]"

(Emphasis in original; some citations omitted.) The "other sources of law" to which *Don't Waste Oregon* refers include the Supreme Court's and our precedent. *Johnson*, 187 Or App at 449.

Here, the ALJ and EAB affirmed the Employment Department's authorized representative's conclusion:

"It was poor judgment for the claimant to be argumentative to his employer when denied time off from work. This was an isolated instance because the claimant had never been warned regarding his conduct at work prior to this instance. An isolated instance of poor judgment is not misconduct."

Because this interpretation of "isolated instance of poor judgment" is in no way inconsistent with the text or context of the rule, we are guided by case law.

That law, however, does not establish a bright line to which we might refer in deciding this case. The Oregon

appellate courts have decided seven cases involving the question whether a verbal outburst at a supervisor is poor judgment or misconduct. In four cases, the court held that the outburst was poor judgment; in three, it was misconduct. A brief review of the cases, beginning with those in which the court awarded benefits, provides useful context. In *Goodwin v. Emp. Div.*, 35 Or App 299, 304, 581 P2d 115 (1978), an employee persistently extended an argument with her supervisor after the supervisor told her to "shut up." We held that "[t]his single instance of hotheadedness was insufficient to disqualify claimant from unemployment benefits." *Id.* In *Bunnell v. Employment Division*, 304 Or 11, 13, 741 P2d 887 (1987) the employee, angry at management for having reassigned her to a new task, engaged in a loud, abusive argument with her supervisor in the presence of fellow employees. Ultimately, she told her supervisor that she had "had enough of this shit" and "of this store." The Supreme Court, reversing EAB and this court, held that the employee's conduct was "a classic example of an isolated instance of poor judgment." *Id.* at 17. In *Waters v. Employment Div.*, 125 Or App 61, 65, 865 P2d 368 (1993), the employee, angry with management for having changed his work schedule, left a series of telephone messages containing "mild profanity," like "damn" and "hell," on his supervisor's answering machine. Citing *Bunnell*, we held that the employee "acted in anger" and that the incident was merely "poor judgment." *Id.* And in *Perez v. Employment Dept.*, 164 Or App 356, 367, 992 P2d 460 (1999), a farm worker, chastised by his manager for talking to a union organizer while working, was fired after an argument during which he told the manager to "stick it." We held that the outburst was an isolated incident of poor judgment.

On the other hand, in *Columbia Plywood v. Employment Div.*, 36 Or App 469, 471, 584 P2d 784 (1978), an employee "became incensed" because of a reprimand and "during the course of a heated discussion called the foreman a 'dummy.'" We evaluated the verbal outburst as part of a larger incident in which claimant had knowingly disregarded his foreman's instructions, overreacted to the foreman's "reasonable request, * * * [and] engag[ed] in a loud, extended argument with the foreman during which he insulted the foreman[.]" We held that "taken together," that conduct was

"not the type of minor peccadillo" that qualified as a mere incident of poor judgment. *Id.* In *Weyerhaeuser Co. v. Employment Div.*, 103 Or App 143, 145, 796 P2d 385 (1990), an assembly line worker "became incensed" when reprimanded for a delay in his work area.

> "For nearly 30 minutes a debate ensued, in which claimant swore at his supervisor, called him obscene names and, at times, loudly argued his point within inches of the supervisor's face.
>
> "After the confrontation, claimant returned to his work area to help with the back up. While he was working on the line, he told a different shift supervisor that he was going to 'kick [the supervisor's] fucking ass.' At that point, claimant was suspended pending further investigation."

*Id.* Emphasizing the employee's physical intimidation of his supervisor and the explicit verbal threat of violence, we reversed EAB and held that the incident was worse than poor judgment. *Id.* at 147. And in *Halling v. Employment Div.*, 108 Or App 457, 459, 816 P2d 1173 (1991), an employee who was displeased with his work schedule "became very upset and called the owner an '[expletive deleted]'." At that point, the owner warned the employee not to use abusive language and threatened to fire the employee if he did not apologize. The employee then "stated, 'Fire me then, you [expletive deleted].' The owner then discharged claimant." *Id.* at 460. Reviewing for substantial evidence, we affirmed EAB's decision to deny benefits. To distinguish the case from *Bunnell*, we emphasized that in the earlier case "the claimant's outburst was not followed by repetitious conduct in the face of a warning to cease," whereas in *Halling* it was. *Halling*, 108 Or App at 461.

The lesson to be drawn from those cases, if lesson there be, is that a heated argument between an employee and his or her supervisor can be either poor judgment or outright misconduct depending on the mitigating or aggravating circumstances surrounding the incident. Mitigating circumstances include the employee's apology, *Bunnell*, 304 Or at 17; *Perez*, 164 Or App at 367; the relative mildness of the profanity used by the employee, *Waters*, 125 Or App at 63; the lack of any indication that the employee was trying to harass

or annoy the supervisor, *id.* at 64; and an exemplary work history, *Perez,* 164 Or App at 367. Aggravating factors include anger that is not proportional to the provocation, *Columbia Plywood,* 36 Or App at 471; verbal threats of physical harm, *Weyerhaeuser Co.,* 103 Or App at 147; persistence in pursuing the argument beyond a brief period, *id.* at 147 (30 minutes); obscenity or vulgarity that is not "mild," *Halling,* 108 Or App at 461;[1] and especially repeated use of insulting vulgarity after explicit warning to stop—the factor that the *Perez* court used to distinguish the poor judgment in that case from the misconduct in *Halling. Perez,* 164 Or App at 367.

■ In the present case, there are both mitigating and aggravating circumstances. Employer notes that claimant, a large man, was an intimidating presence to the owner, a small woman. Claimant's work history included other heated arguments, albeit not serious enough to amount to misconduct. On the other hand, as EAB noted, claimant's profanity was mild, he did not persist in prolonging the argument beyond a few moments, and he was never warned that heated arguments could lead to discharge. Unlike the employee in *Halling,* he did not insult or curse the supervisor after being told not to.

In light of those facts, we cannot say that the department's decision to interpret the term "poor judgment" so as to include claimant's conduct here is implausible or inconsistent with earlier cases. The conduct falls close to the imaginary (and not very straight) line distinguishing poor judgment from misconduct, and in reaching the conclusion that it did, the department did not exceed "the range of its responsibility for effectuating a broadly stated statutory policy." *McPherson,* 285 Or at 550.

Affirmed.

---

[1] We infer from the use of the phrase "expletive deleted" and from the court's description of the employee's conduct as "abusive" that the profanity in the phrase, "Then fire me, you [expletive deleted]" is less mild than "damn" or "hell."