Argued and submitted June 12, affirmed August 1, 2007

KING CITY REHAB, LLC,
dba King City Rehabilitation and Living Center,
dba King City Rehab Specialty Care,
an Oregon limited liability company,
*Plaintiff-Appellant,*

*v.*

CLACKAMAS COUNTY,
a political subdivision,
*Defendant,*

*and*

Brian ANDERSON,
Bruce Anderson, Karen Carroll, Kathy Crayne,
Dennis Hicks, John Jensen, Nathan Silvola,
Geraldine Stanley, Sharon Bighill, and Irene Shuler,
being the nieces and nephews of
Henry Smirnes and Matilda E. Smirnes;
and Forest Grove Senior Center,
dba Senior Guardianship Assistance Program,
an Oregon not for profit entity,
as personal representative of the Estate of
Matilda E. Smirnes,
*Defendants-Respondents,*

*and*

DOES 1-10,
being the unknown heirs of
Henry Smirnes and Matilda E. Smirnes;
and all other persons or parties
unknown claiming any right, title, lien,
or interest in the real property
described in the first amended complaint,
*Defendants.*

Clackamas County Circuit Court
CV05020792; A132436

164 P3d 1190

Judith Giers argued the cause for appellant. With her on the briefs was Hershner Hunter, LLP.

Pamela J. Stendahl argued the cause for respondents. On the brief were Peter R. Chamberlain and Bodyfelt Mount Stroup & Chamberlain, LLP.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

This is an action to foreclose a long-term care lien. Plaintiff King City Rehab, LLC (King City) provided long-term care services to a resident who did not pay for those services for a period of eight months and, later, died. King City perfected a lien and initiated this action to foreclose the lien. Defendant Forest Grove Senior Center, dba Senior Guardianship Assistance Program (Senior GAP), the personal representative of the estate of the resident, tendered the full amount stated in the notice of lien, plus interest. King City, however, refused the tender, insisting on the payment of attorney fees as well. Senior GAP refused to pay the attorney fees. The parties filed cross-motions for summary judgment on the question whether Senior GAP is required to pay attorney fees and collection costs in order to satisfy the lien. The trial court sided with Senior GAP, dismissed the foreclosure proceeding, and awarded Senior GAP attorney fees. King City appeals, arguing that the trial court erred in concluding that Senior GAP is not required to pay attorney fees to satisfy the lien and in awarding Senior GAP its own attorney fees. We affirm.

The relevant facts are not in dispute. Matilda Smirnes was a resident at King City's long-term care facility beginning in July 2002. Smirnes's son, Richard, acted as her agent and entered into a contract with King City to provide the long-term care services. The contract provided that, if Smirnes did not pay her bill for those services and if King City was required to hire an attorney to commence collection efforts, Smirnes "agrees to pay reasonable attorney fees and costs incurred in such collection effort."

Richard managed his mother's finances and wrote checks to King City for its long-term care services until he died in October 2004. For several months following that death, no payments were sent to King City for its long-term care services to Smirnes. In January 2005, Senior GAP was appointed Smirnes's guardian. Smirnes, however, died a few weeks later. By the time of her death, her unpaid bills to King City totaled $13,960.21.

In February 2005, King City filed and served a notice of lien on real property held by Smirnes's estate for unpaid long-term care services. The notice included the following statement of amount due:

"The following is a true statement of Claimant's demand after deducting all credits and offsets:

"Services provided from October 1, 2004
through January 31, 2005 . . . . . . . . . . . . . . . .$13,960.21*
Accrued Interest at the rate of 9% per annum
from October 1, 2004 to February 4, 2005 . . . $   437.17
For an itemized billing see attached billing inquiry
attached to this Lien as Exhibit A.

"(*Plus accruing Interest at the rate of 9% per annum from February 5, 2005, until paid.)"

Several weeks later, King City initiated this action to foreclose the lien.

In April 2005, Senior GAP was appointed the personal representative of Smirnes's estate. In June 2005, Senior GAP sent King City a check in the amount of $14,816.19, which covered the entire amount of the principal and interest owed to King City at that time. King City refused the payment. By that time, it had accumulated over $13,000 in attorney fees in attempting to collect the debt, and it demanded payment of the attorney fees to satisfy the lien. Senior GAP refused.

Senior GAP answered the complaint and asserted affirmative defenses, seeking a discharge of the lien and dismissal of the foreclosure action. It also filed a counterclaim under ORS 87.539(4), based on King City's failure to discharge the lien, seeking a statutory award of $100 plus attorney fees.

The parties filed cross-motions for summary judgment. King City sought foreclosure of its lien and dismissal of the counterclaim. Senior GAP sought dismissal of the foreclosure action and a release of the lien. The trial court granted Senior GAP's motion and denied King City's motion, ruling that the amount that Senior GAP had tendered constituted full payment of the lien. The court awarded statutory damages of $100 to Senior GAP and awarded it attorney fees

under ORS 87.539(4) for having prevailed in the foreclosure action.

On appeal, King City first argues that the trial court erred in granting Senior GAP's summary judgment motion and in denying its own summary judgment motion. According to King City, once it commenced collection efforts, any tender by Senior GAP had to include any attorney fees that accumulated. Because Senior GAP's tender did not include attorney fees, King City asserts, that tender was insufficient. King City reasons that, at common law, if the underlying obligation provides for recovery of attorney fees, then any tender must include payment of those attorney fees in order to be sufficient to release the lien. King City asserts that nothing in the statutes pertaining to long-term care liens evinces an intention to depart from that common-law rule. In this case, King City observes, the underlying contract provides for an award of attorney fees in any collection action under the contract. As a result, it concludes, Senior GAP's tender in this case was insufficient, because it did not include attorney fees.

Senior GAP responds that the flaw in King City's argument is in one of its major premises—that is, that the applicable statutes do not depart from the common law. To the contrary, Senior GAP argues, the statutes provide for a lien for the "contracted costs of care," which are specifically defined as the "the services rendered in a long term care facility." Attorney fees, Senior GAP argues, are not included among the costs that may be recovered as part of those "contracted costs of care."

■ Thus framed, the issue is one of statutory construction, governed by familiar principles requiring us to ascertain the meaning of the relevant statutes most likely intended by the legislature that enacted them. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with the text of the statute, along with any pertinent rules governing the construction of the texts of statutes. *Id.* at 610. The common-law context is a relevant consideration in an examination of the text of a statute. *Fresh v. Kraemer*, 337 Or 513, 520, 99 P3d 286 (2004) ("Statutory context includes * * * the preexisting common law[.]"). But it is the current

wording of the statute that controls. *State v. Couch*, 341 Or 610, 618, 147 P3d 322 (2006).

ORS 87.503 establishes the right to the lien for "contracted costs of care." ORS 87.507 and ORS 87.512 state the requirements for the perfection of the lien and the contents of the notice of lien. The notice of lien is required to include "[a] true statement of demand, including an itemized statement of services provided and setting forth the amount due and owing to the long term care facility as of the date of the notice, after deducting all credits and offsets." ORS 87.512(1). ORS 87.517 provides for the recording of the notice of lien, and ORS 87.522 provides for its foreclosure.

ORS 87.539 is the provision central to our discussion. It states the consequences of payment of the lien and provides, in part:

> "(1)   When a long term care facility receives payment from an individual, an individual's estate, the State of Oregon or any other source *for the care claimed in a notice of lien* filed under ORS 87.507, the long term care facility shall file with the recording officer of the county in which the notice of lien was filed a certificate declaring that payment has been received and that the lien is discharged.

> "* * * * *

> "(4)   If, after receiving payment *for the care claimed in a notice of lien* filed under ORS 87.507, a long term care facility fails to discharge the lien or release the claim of lien within 10 days, the long term care facility is liable to the individual or to the spouse or the estate of the individual for $100 or the amount of actual damages, whichever amount is greater.

> "(5)   In all actions brought under this section, the court may allow reasonable attorney fees at trial and on appeal to the prevailing party."

(Emphasis added.)

From the foregoing statutes, it seems clear that, whatever may have been the common-law rule with respect to payments of liens, the tender of the amount claimed in the notice of lien is sufficient to satisfy a long-term care lien. Indeed, payment of the amount claimed in the notice of lien

triggers a statutory obligation to discharge the lien within 10 days. ORS 87.539(4).

■     In this case, as we have noted, King City filed and served a notice of lien that declared the amount due to be $13,960.21, plus interest. It is undisputed that, in June 2005, Senior GAP tendered a check for that amount. Under the plain and unambiguous text of ORS 87.539(1), King City should have filed a certificate declaring that the payment had been received and that the lien was discharged.

■     King City nonetheless insists that, when the requirements of ORS 87.539 are considered in context, it becomes clear that Senior GAP's tender was insufficient because it did not include King City's attorney fees. Of particular importance, King City contends, is the fact that ORS 87.503 declares that, when an individual receives long-term care "under a written contract," that individual is liable for the "contracted costs of care." According to King City, the "contracted costs of care" unambiguously include attorney fees for two reasons. First, ORS 87.501(2) defines the term "care" by reference to a "nonexclusive" list that includes administrative costs. Costs related to collecting bills, it argues, are sufficiently analogous to administrative costs to be part of the costs of "care." Second, and apart from that, King City contends that its contract with Smirnes expressly provides for recovery of attorney fees in any collection effort.

■     We find neither argument persuasive. We begin with the definition of the costs of "care," as that term is defined by statute. The statute does not, as King City contends, define the term merely by reference to an open-ended "nonexclusive" list of costs, which includes costs of administration. The statute clearly states that, for the purposes of the long-term care lien provisions, the term "means all the *services rendered in a long term care facility*, including but not limited to medical care, room and board, nursing care, administrative costs, supplies, equipment and ancillary services such as therapies." ORS 87.501(2) (emphasis added). The statute thus does not mention just any "administrative costs" as being included within the costs of "care." To the contrary, the statute refers to the administrative costs that pertain to providing services in the long-term care facility. Confirming that

reading is the fact that every other term in the list clearly refers to the provision of services *to the resident in the facility*. Under the principle of *noscitur a sociis*, terms in a list are interpreted in light of the common characteristics of other terms in the same list. *State v. Moen*, 309 Or 45, 89 n 17, 786 P2d 111 (1990); *Johnson v. Employment Dept.*, 187 Or App 441, 450 n 4, 67 P3d 984, *rev den*, 336 Or 60 (2003) (under principle of *noscitur a sociis*, the court assumes "that words in a series share the same quality").

■        Aside from that, it seems clear that, when the legislature wants to mention attorney fees, it does so. ORS 87.522, for example, provides that,

> "[i]n a suit to foreclose a lien created by ORS 87.503, the court, upon entering judgment for the lien claimant, shall allow as part of the lien the moneys paid for the recording of the notice of lien under ORS 87.517. The court shall also allow reasonable attorney fees at trial and on appeal to the prevailing party."

The statute is significant for at least two reasons. First, as we have suggested, it demonstrates that the legislature knows how to refer to attorney fees when it so wishes. It apparently did not wish to mention attorney fees in its definition of "care" in ORS 87.501(2). Second, and apart from that, the statute demonstrates that, although attorney fees are expressly available to a prevailing party in a lien action, they are not part of the lien itself. The statute expressly defines the costs of recording the lien as part of the lien, but not attorney fees.

That leaves King City's reliance on the fact that its contract with Smirnes included a provision for recovery of attorney fees. The short answer to that contention is that, for whatever reason, King City did not bring an action to enforce the terms of its contract. This is an action under the long-term care lien statute, not the contract. We conclude that the trial court did not err in granting Senior GAP's motion for summary judgment and in denying King City's motion.

King City also argues that the trial court erred in awarding attorney fees to Senior GAP. Its argument, however, is predicated on its contention that the trial court erred in concluding that Senior GAP prevailed in the first place.

Because we have concluded that the trial court did not err in that respect, we need not address King City's argument about the award of attorney fees.

Affirmed.